IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ASHLEY N. MORGAN, | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | Civil Action No. 1:25-cv-00416 |
| | § | |
| LINDA MCMAHON, IN HER | § | |
| OFFICIAL CAPACITY AS | § | |
| SECRETARY OF THE UNITED | § | |
| STATES DEPARTMENT OF | § | |
| EDUCATION, AND THE UNITED | § | |
| STATES DEPARTMENT OF | § | |
| EDUCATION, | § | |
| Defendants | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Ashley N. Morgan (Morgan) brings this suit against Linda McMahon, in her official capacity as the Secretary of the United States Department of Education (Secretary McMahon), and the United States Department of Education (the Department of Education).  Morgan would respectfully show the following in support:

### I.    SUMMARY OF THE ACTION

1.    This lawsuit seeks to hold the Department of Education accountable for pulling the rug out from under a student loan borrower and removing her option to repay her loans pursuant to an income-driven repayment plan.[1]  Morgan took on student loan debt in reliance on the Department of Education's promise (and Congress' directive) that she would be offered an option to repay her student loan debt in monthly payments based on her income.  The Department of Education has violated those promises and left

---

[1] There are several variations of income-driven repayment plans. They will be collectively referred to herein as income-driven repayment. Income-driven repayment is also referred to as income-contingent or income-based repayment.

Morgan and many other student loan borrowers saddled with insurmountable monthly student loan payments.

2.     The master promissory notes (MPNs) that Morgan signed contained advisory statements as to her rights and responsibilities.[2]  The advisory statements informed Morgan that income-driven repayment plans would be available to her when it came time to repay her student loans.[3]

3.     In 2017, Morgan applied for income-driven repayment, and her application was accepted.  Morgan is on the Income-Based Repayment (IBR) plan for some of her federal student loans and on the Pay As You Earn (PAYE) plan for the remainder of her federal student loans.  Until February 2025, Morgan timely made her payments and recertified her income as required to remain on income-driven repayment.

4.     Silently and without warning, the Department of Education stripped Morgan of her ability to make monthly payments based on her income.  In mid-February 2025, the Department of Education made the decision to remove access to income recertification forms on the studentaid.gov website.  Morgan and other borrowers were not notified ahead of time.

5.     Morgan only learned that she was going to be blocked from recertifying her income when she logged into her online accounts with her student loan service provider, Nelnet, in order to go through the routine process of recertifying her income.  She could not access the form.  Instead, the Department of Education posted a two-sentence alert

---

[2] *See* Exhibits A (Morgan's redacted 2011 master promissory note) and B (Morgan's redacted 2014 master promissory note).  These were the only two master promissory notes Morgan was able to obtain on studentaid.gov.
[3] *Id.*

which provided no guidance to borrowers about how the terms of their income-driven repayment plans would be impacted.

6.    Days after the Department of Education's disabled the online recertification forms, the Department of Education issued a memorandum to student loan service providers.[4]  The memorandum ordered student loan service providers to stop accepting and processing *all* income-driven repayment applications.[5]

7.    Due to the Department of Education's actions, Morgan and other borrowers have faced steep hikes in the amount of their monthly student loan payments.[6]  Morgan's monthly student loan payments ***more than quadrupled* from \$507.19 to \$2,463.58**.

8.    Going one step further, the Department of Education failed to put the borrowers on an "administrative forbearance," where payments would be paused without interest accruing.

9.    Recognizing the Department of Education's actions put millions of student loan borrowers at risk of default, on March 7, 2025, a group of twenty-five United States Senators issued a letter to Secretary McMahon demanding answers to a series of

---

[4] Danielle Douglas-Gabriel, *It could be months before affordable student loan repayment plans return*, The Washington Post, Feb. 28, 2025, https://www.washingtonpost.com/education/2025/02/27/student-loan-repayment-options-affordable-pause/

[5] *Id.*

[6] Adam Minsky, *Student loan borrowers are reporting huge spikes in monthly payments as repayment system buckles*, Forbes, Mar. 14, 2025, https://www.forbes.com/sites/adamminsky/2025/03/14/student-loan-borrowers-are-reporting-huge-spikes-in-monthly-payments-as-repayment-system-buckles/

questions about income-driven repayment, including when and whether deadlines for recertification would be extended.[7]

10.     The Department of Education then slashed its own work force on March 11, 2025 as the "first step" to shutting down the agency.[8]  The deep cuts to its employees included the Office of Financial Student Aid (FSA), creating more panic and uncertainty for Morgan and other student loan borrowers.  These actions came on the heels of the recent actions to gut student loan protections from the Consumer Financial Protection Bureau (CFPB).[9]

11.     The Department of Education and Secretary McMahon have adopted a cruel policy of obfuscation.  Their actions are arbitrary, capricious, and not in accordance with the law.  Defendants are failing to adhere to their statutory obligations under 20 USC § 1087e, and they have not followed the negotiated rulemaking process prescribed by the Higher Education Act and the Administrative Procedure Act.  Morgan seeks relief from

---

[7] *See* Exhibit C, Letter from Senator Bernard Sanders et al. to Secretary Linda McMahon (March 7, 2025).

[8] Shahar Ziv, *Education Department layoffs are 'First Step' to Shutdown per McMahon*, Forbes, Mar. 13, 2025, https://www.forbes.com/sites/shaharziv/2025/03/13/education-department-layoffs-are-first-step-to-shutdown-per-mcmahon/ ; Cory Turner, *The Education Department is being cut in half. Here's what's being lost*, NPR, Mar. 13, 2025, https://www.npr.org/2025/03/12/nx-s1-5325854/trump-education-department-layoffs-civil-rights-student-loans

[9] On February 14, 2025, the Acting CFPB Director Russell Vought fired the Student Loan Ombudsman Julia Barnard. *See Trump, Vought, and Musk Team Up to Abandon Students and Borrowers, Illegally Fire Top Student Loan Industry Watchdog*, Student Borrower Protection Center, Feb. 14, 2025, https://protectborrowers.org/trump-vought-and-musk-team-up-to-abandon-students-and-borrowers-illegally-fire-top-student-loan-industry-watchdog/#:~:text=February%2014%2C%202025%20%7C%20WASHINGTON%2C,attempt%20to%20dismantle%20the%20agency; Lauren Feiner, *CFPB workers are reinstated after a court order, but many still can't work*, The Verge, Mar. 18, 2025, https://www.theverge.com/news/631465/cfpb-probationary-employees-court-order-reinstatement

this Court to remedy the harm that Defendants' actions and inactions have caused her, including temporary[10] and permanent injunctive relief and declaratory judgment.

12.    Morgan turns to the Court for relief having been unable to reach a resolution of the problem by:  contacting her student loan service provider multiple times; contacting the Department of Education multiple times; contacting each of her Congressional representatives; contacting and being interviewed by reporters; making a written complaint with the Office of Federal Student Aid; and making a written complaint with the CFPB.

## II.    THE PARTIES

13.    Plaintiff Morgan is a first-generation attorney who works and resides in Austin, Texas.

14.    The United States Department of Education is a federal agency headquartered in the District of Columbia with its principal office located at 400 Maryland Avenue, SW, Washington, D.C. 20202.

15.    McMahon is sued in her official capacity as Secretary of Education, in which capacity she has the ultimate responsibility for the activities of the Department, including the actions complained of herein.  Secretary McMahon maintains an office at 400 Maryland Avenue, SW, Washington, D.C. 20202.

## III.    JURISDICTION AND VENUE

16.    This Court has subject matter jurisdiction over this action because it is a case arising under federal law, *see* 28 U.S.C. § 1331, and because it is a case to compel

---

[10] In accordance with Rule CV-65, Morgan will file her application for a temporary restraining order pursuant to Federal Rule of Civil Procedure 65 and the All Writs Act (28 U.S.C. § 1651) in a separate instrument.

federal agencies and officers to perform their duty, *see* 28 U.S.C. § 1361.

17.    The relief requested herein is authorized by the APA, 5 U.S.C. §§ 702-706, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and the All Writs Act, 28 U.S.C. § 1651.

18.    Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(e) because this is a civil action in which one of the Defendants is an officer of an agency of the United States acting in her official capacity, this action does not involve real property, and this action is brought in the venue in which Plaintiff Morgan resides.

19.    In addition to the above, Plaintiff Morgan is a resident of the State of Texas, residing in Austin, Travis County, Texas.  The United States District Court in and for the State of Texas has a substantial interest in protecting the rights of Plaintiff Morgan and fashioning the remedies specified in this Complaint as relief.

20.    Defendants have waived sovereign immunity as to the relief requested in this matter pursuant to 5 U.S.C. § 702.[11]

21.    The Department of Education's actions constitute "final agency actions."[12] The Department of Education has blocked Morgan from recertifying her income for her income-based repayments plans and in so doing, has harmed her.  The Department of

---

[11] *See Tex. v. U.S. Dep't of Homeland Security*, 234 F.4th 186, 201 (5th Cir. 2024).

[12] *See Data Mktg. P'ship, LP v. U.S. Dep't of Labor*, 45 F.4th 846, 853 (5th Cir. 2022) (final agency action marks the consummation of the agency's decisionmaking process, and the action is one from which rights or obligations have been determined, or from which legal consequences will flow); *Clarke v. Commodity Futures Trading Comm'n*, 74 F.4th 627, 639 (5th Cir. 2023) (the mere fact that the agency could, or actually does, reverse course in the future does not change the action's finality); *DRG Funding Corp v. Sec. of Hous. and Urban Dev.*, 76 F.3d 1212, 1214 (D.C. Cir. 1996) (considerations as to whether an agency action is final include whether the action is sufficiently direct and immediate, whether the action has a direct effect on day-to-day business, and whether the action adversely affects the complainant).

Education's actions have had important consequences for Morgan's loan payment obligations.

22.    Defendants' actions give rise to an actual controversy for purposes of the Declaratory Judgment Act and Article III of the U.S. Constitution.

## IV.    GENERAL ALLEGATIONS

**A.    The Department of Education has a statutory obligation to provide student loan borrowers with income-driven repayment plans and to provide borrowers with information about the terms of their repayment plans.**

23.    Congress enacted the Student Loan Reform Act of 1993 which created income-driven repayment and amended the Higher Education Act of 1965 (HEA).[13]  The legislation was passed when Morgan was about four years old and long before she made the decision to pursue her law degree or take on six-figures in student loan debt.

24.    The Student Loan Reform Act of 1993 provided *borrowers could choose* to repay their loans through four generally applicable options:

> (1)    a standard repayment plan with fixed payments over a period not exceeding ten years;
>
> (2)    a graduated repayment plan with increasing payments over a period not exceeding ten years;
>
> (3)    an extended repayment plan with fixed or graduated payments over a period not exceeding twenty-five years; or
>
> (4)    an income contingent repayment plan with varying payments based on income over a period not exceeding twenty-five years.[14]

25.    Notably, in the lead up to the 1992 reauthorization of the Higher Education Act and the 1993 budget bill expanding income-contingent student loans, committees in

---

[13] *See* Student Loan Reform Act of 1993, Pub. L. No. 103-66, §§ 4011, 4021, 107 Stat. 341, 341-20 (codified as amended at 20 U.S.C. §§ 1087a-1087h).
[14] *Id.*

both the House and Senate held hearings about the bipartisan concept of income-driven repayment, and forgiveness was described as a core component of the program.[15]

26.    Over the years, the four core repayment options set forth in section 1087e(d)(1) have stayed largely the same.

27.    By statute, the borrower is empowered with the ability to choose their repayment plan, and the Secretary "*shall offer* a borrower of a loan…a variety of plans for repayment of such loan."[16]  The Department of Education thus has a "statutory obligation to offer borrowers access to an income contingent repayment plan."[17]

28.    Various income-driven repayment plans have consistently been available in one form or another for more than thirty years.  In accordance with Congress' directive, the Department of Education established various income-driven repayment plans, including the original Income-Driven Repayment (ICR) plan (1994)[18] and the Pay as You Earn (PAYE) plan (2012).[19]  The Income-Based Repayment (IBR) plan was created by Congress in 2007 when it passed the College Cost Reduction and Access Act (CCRAA).[20] It was President George W. Bush that signed the final version into law.[21]  Currently, about

---

[15] Robert Shireman, *In a Key Student Debt Case, a Federal Court Is Making a Serious Factual Error*, The Century Foundation, March 17, 2025, https://tcf.org/content/commentary/in-a-key-student-debt-case-a-federal-court-is-making-a-serious-factual-error/

[16] 20 U.S.C. § 1087e(d)(1).

[17] Fed. Reg. 89, 221 (Nov. 15, 2024) (to be codified at 34 CFR pt. 685).

[18] *See* William D. Ford Federal Direct Loan Program, 59 Fed. Reg. 61664, 61666, 61669 (Dec. 1, 1994) (to be codified at 34 C.F.R. pt. 685) [referred to as the ICR Rule].

[19] *See* Federal Perkins Loan Program, Federal Family Education Loan Program, & William D. Ford Federal Direct Loan Program, 77 Fed. Reg. 66088, 66139-40 (to be codified at 34 C.F.R. pts. 674, 682, 685 (Nov. 1, 2012) [hereinafter PAYE].

[20] College Cost Reduction and Access Act, Pub. L. No. 110-84, 121 Stat. 784 (2007) [hereinafter IBR].

[21] Robert Shireman, *Learn Now, Pay Later: A History of Income-Contingent Student Loans in the United States*, 671.1 Ann. Am. Acad. Pol. & Soc. Sci. 184, 197 (2017) (https://journals.sagepub.com/doi/epub/10.1177/0002716217701673)

13 million borrowers are enrolled in an income-driven repayment plan.[22]

29.     Under the original Income-Contingent Repayment (ICR) plan, the borrower's monthly payment amount is either 20% of their discretionary income or a percentage of what the borrower would repay under a Standard Repayment Plan with a 12-year repayment period, whichever is less.[23]  Under the ICR plan, if the borrower's loan is not repaid in full after the borrower had made the equivalent of 35 years of qualifying monthly payments and at least 35 years have elapsed, any remaining loan amount will be forgiven.[24]

30.     Under the Income-Based Repayment (IBR) plan, the borrower's monthly payment amount is generally 15% of the borrower's annual discretionary income, divided by 12. [25]  If the borrower's loan is not repaid in full after the borrower has made the equivalent of 20 or 25 years of qualifying monthly payments and 20 or 25 years have elapsed, any remaining loan amount is forgiven.[26]

31.     Under the PAYE plan, the borrower makes monthly payments at a rate of 10% of the borrower's annual discretionary income, divided by 12.[27]  Under the PAYE plan, if the borrower's loan is not repaid in full after the borrower has made the equivalent of 20 years of qualifying monthly payments and at least 20 years have elapsed, any remaining loan amount will be forgiven.[28]

---

[22]   Federal  Student  Loan  Portfolio  by  Repayment  Plan,  2024  Q2, https://studentaid.gov/sites/default/files/fsawg/datacenter/library/DLPortfoliobyRepaymentPlan.xls
[23] *See* Exhibit A, page 7.
[24] *Id.*
[25] *Id.*
[26] *Id.* (Duration is dependent on certain qualifications).
[27] *Id.*
[28] *Id.*

32.     Each of the three income-driven repayment plans share the same features with respect to how discretionary income is calculated.[29]

33.     In addition to requiring the Secretary to establish income-driven repayment plans, the Secretary "shall establish procedures under which a borrower. . . who chooses or is required to repay such loan pursuant to income contingent repayment is notified of the terms and conditions of such plan."[30]

34.     By statute, it is "[t]he borrower [who] may choose" between the repayment plans.[31] The borrower has retained this right since the Student Loan Reform Act was enacted in 1993, though the repayment plans have changed over time. [32]

35.     It is only when the "borrower of a loan . . . not select a repayment plan," that the "Secretary may provide the borrower" with one of the first of the three repayment plans.[33] Even then, by statute, the borrower retains the power to change the selection of a repayment plan, whether that selection was made by the borrower or by the Secretary.[34]

**B.    Defendants are violating their statutory obligations by failing to provide Morgan an income-driven repayment option and failing to provide information about her repayment plan.**

36.     On or about February 18, 2025, the Department of Education disabled borrowers from accessing the recertification forms and application forms for income-driven repayment plans on the studentaid.gov website.

---

[29] *Id.* Discretionary income is the difference between a borrower's adjusted gross income and 150% of the poverty line guideline amount for the borrower's state of residence and family size. If the borrower is married and files a joint federal income tax return, the income used to determine the plan payment amount will be the combined adjusted gross income of the borrower and the borrower's spouse.

[30] 20 USC § 1087e(e)(6) (2024).

[31] 20 U.S.C. § 1087e(d)(1) (2024).

[32] 20 U.S.C. § 1087e(d)(1) (1993); 20 U.S.C. § 1087e(d)(1) (2024).

[33] 20 U.S.C. § 1087e(d)(2) (2024).

[34] 20 U.S.C. § 1087e(d)(3) (2024).

37.    On or about February 26, 2025, the Department of Education issued a memorandum to student loan service providers in which the Department of Education instructed the providers to stop accepting and processing all income-driven repayment applications, including the recertification of income for those borrowers who were already on income-driven repayment plans.[35]

38.    Defendants did not go through the negotiated rulemaking process required by the Higher Education Act (HEA) and Administrative Procedures Act (APA) before taking the foregoing actions.

39.    On March 7, 2025, a group of twenty-five Senators sent Secretary McMahon a letter demanding answers and guidance to help student loan borrowers by no later than March 14, 2025.[36]

40.    Rather than providing answers for what would happen to borrowers on income-driven repayment, the Department of Education cut itself in half.  The purge on Tuesday, March 11, 2025 included 320 staffers from the Office of Federal Student Aid (FSA).[37]  This move created further uncertainty and prompted panic.

41.    By removing access to the income recertification form and instructing Morgan's loan service provider not to accept or process the recertification form,

---

[35] Danielle Douglas-Gabriel, *It could be months before affordable student loan repayment plans return*, The Washington Post, Feb. 28, 2025, https://www.washingtonpost.com/education/2025/02/27/student-loan-repayment-options-affordable-pause/

[36] *See* Exhibit C, Letter from Senator Bernard Sanders et al. to Secretary Linda McMahon (March 7, 2025).

[37] Shahar Ziv, *Education Department layoffs are 'First Step' to Shutdown per McMahon*, Forbes, Mar. 13, 2025, https://www.forbes.com/sites/shaharziv/2025/03/13/education-department-layoffs-are-first-step-to-shutdown-per-mcmahon/ ; Cory Turner, *The Education Department is being cut in half. Here's what's being lost*, NPR, Mar. 13, 2025, https://www.npr.org/2025/03/12/nx-s1-5325854/trump-education-department-layoffs-civil-rights-student-loans

Defendants are preventing Morgan from taking the steps necessary to remain on her income-driven repayment plan. Defendants have stopped Morgan from being able to select a different income-driven repayment plan; Defendants have prevented Morgan from accessing the application form and directed her loan service provider not to accept or process the application form.

42. Further, Defendants have failed to provide Morgan notice concerning the terms of her income-driven repayment plan. As the twenty-five Senators who demanded answers from Defendants succinctly stated:

> "As a steward of federal financial aid dollars, the Department is required by law to ensure borrowers have the information and resources they need to repay their student loans via any repayment plan they qualify for. But as evidenced by the lack of communication regarding the removal of the IDR and online loan consolidation applications, and the absence of clear next steps for borrowers stuck in limbo, we do not believe the Department has acted in accordance with that responsibility. For example, borrowers currently enrolled in IDR plans have to annually recertify their income to stay enrolled in those plans, but the form needed to complete recertification has been removed from the Department's "Income-Driven Repayment (IDR) Plan Request" website because it is the same form used to apply for IDR plans. Consequently, borrowers are currently receiving notices from their student loan servicers instructing them to submit their IDR recertification forms, but if they go to the Department's website to complete the form, they will find it is unavailable, with no guidance for what they should do next."[38]

43. Defendants have failed to provide Morgan information regarding the following:

a. How long will the income-driven repayment applications be offline?

b. How long will servicers be required to pause all processing of income-driven repayment applications?

c. Given that the IBR and PAYE repayment plans are not subject to the court injunction, will the Department of Education restore the ability to apply for, or re-enroll in, IBR and/or PAYE?

---

[38] *See* Exhibit C, Letter from Senator Bernard Sanders et al. to Secretary Linda McMahon (March 7, 2025).

d.  For borrowers currently enrolled in IBR and/or PAYE who have had recertification deadlines that fall within the income-driven repayment processing pause, will their recertification deadlines be delayed or pushed back? If so, for how long?

e.  For borrowers who have been unable to timely process their recertification forms, will they be subject to negative credit reporting? If so, how many borrowers will face negative credit reporting due to issues beyond their control? What steps will the Department take to ensure that the Department of Education's decision to suspend application processing does not result in financial harm to borrowers?

f.  Will the Department of Education commit to ensuring that any borrowers who face negative credit reporting resulting from the Department of Education's actions will not be adversely impacted, including by working with credit reporting agencies to address any adverse impacts to affected borrowers' credit scores?

g.  Will the Department of Education institute an administrative forbearance for borrowers during the income-driven repayment processing pause? If so, when?

h.  What will happen to student loans if the Department of Education is dismantled?

44.    Defendants have proceeded in a haphazard manner instead of going through the notice-and-comment rulemaking process required by both the Higher Education Act and the Administrative Procedures Act.  In dereliction of their duties, Secretary McMahon and the Department of Education have foreclosed Morgan and other borrowers from being able to remain on their income-driven repayment plan or choose another income-driven repayment plan. [39] They have failed to provide basic, necessary information about income-driven repayment plans.

45.    While the Department of Education's two-sentence notice regarding the removal of recertification and application forms references the Eighth Circuit Court's ruling, the ruling did not mandate that Defendants abrogate all income-driven repayment

---

[39] 20 U.S.C. § 1087e(d)(1)-(3) (2024).

options.    Defendants have gone far beyond the scope of the Eighth Circuit Court's February 18, 2025 ruling in the ongoing litigation regarding the SAVE plan.[40]    That ongoing litigation revolves around the SAVE plan; it does not involve a challenge to the IBR statute or regulations, nor does it involve a challenge to the legality of the ICR or PAYE plans.

## C.    Defendants' actions have harmed Morgan.

46.    The Defendants' actions and omissions have caused actual and certainly impending harm to Morgan.

### (1)    Morgan took out student loans for expenses she could not cover by working and securing scholarships.

47.    Morgan is a first-generation attorney.    She was born and raised in rural Nebraska.    Neither of her parents have four-year college degrees.    When she was growing up, her mother worked retail and cleaned houses, and her father worked for the railroad. Morgan has worked since she was in middle school, when she detasseled corn and babysat for neighbors and family friends.    In high school, she had jobs in retail and the food service industry.    Knowing that her family was unable to set aside money for her college education, she worked hard to get a debate scholarship at Baylor University which would cover her tuition.    In undergraduate school, competitive policy debate was Morgan's job. She traveled and competed at debate tournaments most weekends from September to

---

[40] *Missouri v. Trump,* 128 F.4th 979, 998 (8th Cir. Feb. 18, 2025) ("We therefore conclude the district court's injunction should be broadened to enjoin the Secretary's attempt to forgive loans in the SAVE plan through the old REPAYE provisions.").    *See also* Exhibit C, Letter from Senator Bernard Sanders et al. to Secretary Linda McMahon (March 7, 2025) ("While the Department was tasked with implementing a judicial ruling to suspend a single IDR plan—the Saving on a Valuable Education plan (known as SAVE), the Department inexplicably and confusingly chose to also suspend access to every other IDR plan, which includes the Pay as You Earn (PAYE), Income-Contingent (ICR), and Income-Based (IBR) repayment plans, and started blocking all online loan consolidation.")

March during the school year. Outside of the debate season, she worked retail jobs and worked as a hostess/server at the local country club. She was offered a scholarship to obtain a master's degree in communication studies at Baylor University in exchange for coaching debate and serving as a graduate teaching assistant. While attending graduate school, she had a third job working in the law library at Baylor Law School. She graduated with a master's degree in 2014. She went to Baylor Law School from 2014 through 2016. She had a scholarship, but it did not cover her law school tuition.

48.    During the 8 years that Morgan was enrolled at Baylor, she took out student loans to cover her room, board, textbooks, various fees not covered by scholarships, and a significant portion of her law school tuition.

### (2)    Morgan took out student loans in reliance on the promise of income-driven repayment options and has been on the PAYE plan since 2017.

49.    Morgan took out student loans in reliance on being able to repay those loans on an income-driven repayment plan. The master promissory notes that she signed stated that income-driven repayment plans would be available.[41] The master promissory notes indicated that these income-based repayment plans contained a forgiveness component.[42]

50.    Upon graduating from law school, Morgan spent a few months studying for the Texas bar examination, which she took and passed in February 2017. She began working at a law firm in Austin in March 2017. When it came time to begin repaying her student loans, she applied for an income-driven repayment plan. Her application was accepted. Morgan has been on the IBR plan for some of her federal student loans and on

---

[41] *See* Exhibits A and B.
[42] *See* Exhibits A and B.

the PAYE plan for the others.  She has been repaying her student loans since 2017 (save and except for the repayment pause during the COVID-19 administrative forbearance).

51.    Up until 2025, Morgan timely recertified her income as required.  In 2025, Morgan was blocked from being able to timely recertify her income due to the Department of Education's actions.

**(3)    Morgan was blocked from timely recertifying her income by Defendants and as a result, her monthly payments have skyrocketed and she faces imminent, severe financial consequences.**

52.    Morgan's deadline to recertify her income with her student loan service provider (Nelnet, Inc., hereinafter Nelnet) was March 1, 2025.  When Morgan logged into her Nelnet account to recertify her income before the March 1st deadline, she found that she was unable to access the forms due to the Department of Education's actions.  Neither Defendants nor Nelnet provided guidance about how the processing freeze would impact Morgan's repayment plan.  Instead, both the Nelnet website and the studentaid.gov website had the same short notice banner:[43]



53.    As shown in the screenshot below, although Morgan was unable to access the recertification form, Nelnet continued to reflect that her recertification deadline was March 1, 2025:

---

[43] www.studentaid.gov



# Manage My Account

54.     Morgan's monthly student loan payments have more than quadrupled, from $507.19 per month to $2,463.58 per month.  Morgan's monthly payments are now no longer be based on her income.  Instead, Morgan's required payment amount is the amount she would pay under a Standard Repayment Plan with a 10-year repayment period based on the loan amount the borrower owed when the borrower initially entered the income-driven repayment plan.[44]

55.     The new monthly payment amounts are financially devastating for Morgan. Together with her monthly mortgage payment, the monthly payment amounts under the standard repayment plan exceeds half of her monthly net income.

---

[44] https://studentaid.gov/help-center/answers/article/icr-plan-income-family-size-recertification

56.    Between March 3, 2025 and the date of the filing of this lawsuit, Morgan has taken action to try to get relief without seeking court intervention.  She has made several calls to her student loan service provider, Nelnet, and to the Department of Education.  Neither Nelnet nor the Department of Education had an answer as to whether the recertification deadline would be re-opened or extended.  Neither Nelnet nor the Department of Education could say when there would be an update on the situation.

57.    Morgan was able to obtain a temporary hardship forbearance from Nelnet for a period of three months, but her $2,463.58 per month payments resume starting June 2025.  Interest continues to accrue during Morgan's hardship forbearance.  She requested that Nelnet put her on an administrative forbearance, but they informed her that was not an option.

58.    Morgan made additional efforts to secure a resolution of the problem.  She has tried to reach her Congressional representatives several times:  Senator Ted Cruz; Senator John Cornyn; and Representative Lloyd Doggett.  She also called the phone number listed for the Department of Education's Ombudsman and made a phone complaint.  She made written complaints with the FSA and with the CFPB.[45]

59.    To try to raise awareness and prompt the government to act, Morgan

---

[45] On February 14, 2025, the Acting CFPB Director Russell Vought fired the Student Loan Ombudsman Julia Barnard. *See Trump, Vought, and Musk Team Up to Abandon Students and Borrowers, Illegally Fire Top Student Loan Industry Watchdog*, Student Borrower Protection Center, Feb. 14, 2025, https://protectborrowers.org/trump-vought-and-musk-team-up-to-abandon-students-and-borrowers-illegally-fire-top-student-loan-industry-watchdog/#:~:text=February%2014%2C%202025%20%7C%20WASHINGTON%2C,attempt%20to%20dismantle%20the%20agency ; Lauren Feiner, *CFPB workers are reinstated after a court order, but many still can't work*, The Verge, Mar. 18, 2025, https://www.theverge.com/news/631465/cfpb-probationary-employees-court-order-reinstatement

reached out to and was interviewed by a Forbes contributor,[46] and by the Education Reporter for KUT News in Austin.[47]

60.   Morgan has been harmed by Defendants' actions and omissions. Morgan faces a payment schedule which is not based on her income and will result in a default of her student loans. Even if she were to cash out her retirement accounts (at a significant loss after taxes and penalties for early withdrawal), she would not be able to make payments at $2,463.58 per month over a period of ten years. That drastic financial move would cover less than a year of her student loan payments.

61.   Because the Department of Education has refused to place borrowers like Morgan on an administrative forbearance, Morgan was forced to request a hardship forbearance. It is Morgan's understanding that hardship forbearance is finite. Morgan may only request up to 12 months of hardship forbearance at a time with a total of 36 months of hardship forbearance during the life of her loan. Instead of preserving months of hardship forbearance for use in the future should she ever become incapacitated or financially unable to make payments, Morgan has been forced to go into hardship forbearance because the Department of Education has prevented her from being able to make monthly payments based on her income.

62.   Morgan is also harmed because she is missing out on the ability to make qualifying payments and accrue valuable time toward loan forgiveness. Any payments made by Morgan during the hardship forbearance do not count towards loan forgiveness.

---

[46] Shahar Ziv, *PSLF Eligibility and Student Loan Forgiveness Turmoil Spark Panic*, Forbes, Mar. 10, 2025, https://www.forbes.com/sites/shaharziv/2025/03/10/student-loan-forgiveness-pslf-and-education-department-chaos-spark-panic/

[47] Becky Fogel, *An Austin borrower may see her student loan payments skyrocket. She's not alone*, KUT, Mar. 12, 2025, https://www.kut.org/education/2025-03-12/austin-tx-student-loan-payments-borrower-debt-department-of-education

63.     Additionally, Morgan's failure to certify her income can result in loss of eligibility to make payments based on income in the future.[48]

64.     The other repayment options outside of income-driven repayment are not plausible options for Morgan.  The lowest cost option out of the extended repayment programs would cost her about $1,200/month (more than double the amount she would pay under income-driven repayment), and it does not have a forgiveness component similar to the income-driven repayment plans.  If she switches to an extended repayment program, she loses the time she has accrued toward loan forgiveness and the possibility of loan forgiveness after twenty to twenty-five years of payments.

65.     In the likely event that Morgan is unable to keep up with the skyrocketing monthly payments and defaults on her loans, she faces steep penalties.  These penalties may include but are not limited to the following, as set out in Morgan's 2011 master promissory note:[49]

> "18. Defaulting on your loan....If you default:
>
> - We will require you to immediately repay the entire unpaid amount of your loan.
> - We may sue you, take all or part of your federal and state tax refunds and other federal or state payments, and/or garnish your wages so that your employer is required to send us part of your salary to pay off your loan.
> - We will require you to pay reasonable collection fees and costs, plus court costs and attorney fees.
> - You may be denied a professional license.
> - You will lose eligibility for other federal student aid and assistance under most federal benefit programs.
> - You will lose eligibility for loan deferments.
> - We will report your default to national consumer reporting agencies (see #19, "Consumer reporting agency notification")."

---

[48] https://studentaid.gov/manage-loans/repayment/plans/income-driven#eligibility
[49] *See* Exhibit A.

66.    In addition to the immediate and long-term financial ramifications of the Defendants' actions and omissions, Morgan has suffered from mental anguish and pain and suffering.

## COUNT I
### VIOLATIONS OF THE ADMINISTRATIVE PROCEDURE ACT
### 5 U.S.C. § 706

67.    Morgan incorporates by reference all allegations contained in the preceding paragraphs as if set forth fully herein.

68.    Agencies are creatures of Congress and "an agency literally has no power to act...unless and until Congress confers powers upon it."[50]

69.    Under section 492(b)(2) of the HEA, regulations governing rules under title IV of the HEA are generally subject to negotiated rulemaking, unless the Secretary determines that applying such a requirement with respect to given regulations is impracticable, unnecessary, or contrary to the public interest (within the meaning of section 553(b) of title 5, United States Code), and publishes the basis for such determination in the Federal Register at the same time as the proposed regulations in question are first published.[51]    The standard set forth in the HEA is the same as the standard used under the APA to waive notice-and-comment rulemaking.[52]

70.    "Before proposing regulations to implement Title IV programs, [the Department of Education] must 'obtain public involvement in the development' of the regulations, 'prepare draft regulations...and...submit such regulations to negotiated

---

[50] *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986).
[51] 20 USC § 1098a(a)-(b)(2).
[52] 5 USC § 553.  *See also* Fed. Reg. 89, 221 (Nov. 15, 2024) (to be codified at 34 CFR pt. 685).

rulemaking processes.'"[53]  The Department of Education "must obtain 'the advice of and recommendations from' representatives of 'groups involved in student financial assistance programs,' including 'students, legal assistance organizations that represent students, institutions of higher education, State student grant agencies, guaranty agencies, lenders, secondary markets, loan servicers, guaranty agency services, and collection agencies.'"[54]  The purpose and "[t]he hope is that these negotiations will produce a better draft as the basis for the notice and comment proceeding."[55]

71.     Defendants made absolutely no effort to go through the process of notice-and-comment rulemaking here.   Defendants did not obtain public involvement.[56] Defendants did not publish notice of proposed rulemaking in the Federal Register.[57] Defendants did not provide interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments.[58]  Defendants did not incorporate in the rules adopted a concise general statement of their basis and purpose.[59]

72.     The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . is entitled to judicial review thereof."  5 U.S.C. § 702.

73.     The APA provides a cause of action in federal district court for any person aggrieved by final agency action.  *See* 5 U.S.C. §§ 702-704.  The failure of an agency to act constitutes an agency action.  *See* 5 U.S.C. § 702.  Morgan is suffering and has been

---

[53] *N.Y. Legal Assistance Group v. DeVos*, 527 F.Supp.3d 593, 599-600 (S.D.N.Y. 2021) (*citing* 20 USC § 1098a(a)(1), (b)(1)).
[54] *Id.* at 600 (*citing* 20 USC § 1098a(a)(1)).
[55] *USA Grp. Loan Servs., Inc. v. Riley*, 82 F.3d 708, 714 (7th Cir. 1996).
[56] 20 USC § 1098a(a)(1), (b)(1).
[57] 5 USC § 553(b).
[58] 5 USC § 553(c).
[59] 5 USC § 553(c).

aggrieved by Defendants' actions and failure to act as set forth in the foregoing paragraphs.

74.    Defendants' actions and failure to act constitute final agency actions.[60] Defendants have acted in a manner that is arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with the law by, among other actions:

a.    Defendants' unlawful withholding or unreasonable delay of access to the recertification and application forms for income-driven repayment;

b.    Issuance of a memorandum to student loan service providers, including Nelnet, to stop accepting or processing income recertification forms and applications for income-driven repayment;

c.    Defendants' failure to provide Morgan with the ability to do what is required for her to remain on her income-driven repayment plans;

d.    Defendants' unlawful withholding of or unreasonable delay of access to an income-driven repayment plan; and

e.    Defendants' unreasonable delay in providing Morgan with information about the terms of her income-driven repayment plans.

75.    Under the APA, this Court must "hold unlawful and set aside agency action, findings, and conclusions found to be...arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, "contrary to constitutional right, power, privilege, or immunity;" or "in excess of statutory jurisdiction, authority, or limitations,

---

[60] *See Data Mktg. P'ship, LP v. U.S. Dep't of Labor*, 45 F.4th 846, 853 (5th Cir. 2022) (final agency action marks the consummation of the agency's decision making process, and the action is one from which rights or obligations have been determined, or from which legal consequences will flow); *Clarke v. Commodity Futures Trading Comm'n*, 74 F.4th 627, 639 (5th Cir. 2023) (the mere fact that the agency could, or actually does, reverse course in the future does not change the action's finality); *DRG Funding Corp v. Sec. of Hous. and Urban Dev.*, 76 F.3d 1212, 1214 (D.C. Cir. 1996) (considerations as to whether an agency action is final include whether the action is sufficiently direct and immediate, whether the action has a direct effect on day-to-day business, and whether the action adversely affects the complainant).

or short of statutory right."[61]   The APA authorizes this Court to "compel agency action" that has been "unlawfully withheld."[62]

76.    As alleged above, the Secretary has a mandatory statutory, regulatory, and/or contractual duty to offer Morgan access to an IBR, ICR, and PAYE repayment plan.  Defendants' abrupt and unjustified halting of the IBR, ICR, and PAYE repayment plans was not mandated by the Eighth Circuit's decision, is without any rational basis, and is arbitrary and capricious. Defendants are unlawfully preventing Morgan from accessing any IBR and ICR repayment plans.

77.    Morgan requests the Court to exercise its power under 5 USC § 706 and find the following:

    a.    Defendants' actions preventing Morgan from recertifying her income for income-driven repayment are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law;

    b.    Defendant's removal of Morgan from her income-driven repayment plan was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law

    c.    Defendants' failure to provide Morgan with an income-driven repayment option is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; and

    d.    Defendants' failure to provide Morgan with statutorily-required information about her income-driven repayment plans is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

78.    Morgan requests the Court to compel Defendants to:

    a.    Provide Morgan access to forms necessary to recertify her income for her income-based repayment plans;

    b.    Provide Morgan access to IBR, ICR, and PAYE income-based repayment plans;

---

[61] 5 U.S.C. § 706(2)(A)-(C).
[62] 5 USC § 706(1).

c.    Extend Morgan's deadline to recertify her income to a date/time certain no sooner than fourteen days after Morgan has been provided access to the necessary forms to recertify her income; and

d.    Provide Morgan with answers to the questions set forth in paragraph 43.

**COUNT II**
**REQUEST FOR DECLARATORY RELIEF (28 USC § 2201)**

79.    Morgan incorporates by reference all allegations contained in the preceding paragraphs as if set forth fully herein.

80.    With certain enumerated exceptions that do not apply here, in a case of actual controversy within its jurisdiction, any court of the United States "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.

81.    An actual controversy exists here.  Defendants have blocked Morgan from timely recertifying her income and are requiring her to make monthly student loan payments based on a standard repayment plan instead of the income-driven repayment plan she chose.  Defendants are preventing Morgan from either resuming income-driven repayments under the IBR and PAYE plans or choosing another income-driven repayment plan.

82.    Morgan requests the Court to make the following declarations:

a.    Defendants' actions preventing Morgan from recertifying her income for income-driven repayment are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law;

b.    Defendant's removal of Morgan from her income-driven repayment plans was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law;

c.    Defendants' failure to provide Morgan with an income-driven repayment option is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; and

d.      Defendants' failure to provide Morgan with statutorily-required information about her income-driven repayment plans is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

## PRAYER

Morgan respectfully requests the Court to:

a.      Enjoin Defendants from determining that Morgan has failed to timely recertify her income during any time period wherein Defendants have removed access to forms necessary for Morgan to fulfill her recertification obligations;

b.      Enjoin Defendants from removing Morgan from income-driven repayment;

c.      Declare that Defendants' actions preventing Morgan from recertifying her income were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law;

d.      Defendant's removal of Morgan from her income-driven repayment plans was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law;

e.      Declare that Defendants' refusal to provide Morgan and student loan borrowers an income-driven repayment plan is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law;

f.      Declare that Defendants' failure to provide Morgan and other student loan borrowers with statutorily-required information about their income-driven repayment plans is unlawful

g.      Order Defendants to place Morgan's loans in stopped collection status (or administrative forbearance) until Morgan is able to recertify her income and until her monthly student loan payments are adjusted to be based on her income pursuant to the ICR, IBR and/or PAYE plan.

h.      Order Defendants to direct student loan service providers, including Nelnet, to re-open and extend the deadlines for income recertification for borrowers who were timely recertify their income as a result of the Department of Education's actions.

i.      Order Defendants to restore access to income recertification forms and application forms for ICR, IBR, and PAYE income-driven repayment plans.

j.   Order Defendants to direct student loan service providers to resume accepting and processing income recertification forms and application forms for ICR, IBR, and PAYE plans.

k.   Order Defendants to provide Morgan with answers to the questions set forth in paragraph 43.

Morgan prays for all such further relief to which she may show herself justly entitled by law or equity.

Respectfully submitted,

_____*/s/ Ashley N. Morgan*_____

Ashley N. Morgan
State Bar No. 24091339
P.O. Box #151271
Austin, Texas 78715
(308) 293-0134
**PRO SE PLAINTIFF**

# Direct Loans
William D. Ford Federal Direct Loan Program

**Federal Direct Stafford/Ford Loan**
**Federal Direct Unsubsidized Stafford/Ford Loan**
**Master Promissory Note**
**William D. Ford Federal Direct Loan Program**

**EXHIBIT**

**A**

OMB No. 1845-0007
Form Approved
Exp. Date 05/31/2011

Warning: Any person who knowingly makes a false statement or misrepresentation on this form will be subject to penalties which may include fines, imprisonment, or both, under the U.S. Criminal Code and 20 U.S.C. 1097.

## SECTION A: BORROWER INFORMATION                    READ THE INSTRUCTIONS IN SECTION F BEFORE COMPLETING THIS SECTION

1. Driver's License State and No.

2. Social Security No.

3. E-mail Address (optional)

4. Name and Address

MORGAN , ASHLEY N

5. Date of Birth

6. Area Code/Telephone No

7. References: List two persons with different U.S. addresses who have known you for at least three years. The first reference should be a parent or legal guardian.

| | 1. | 2. |
|---|---|---|
| Name | | |
| Permanent Street Address | | |
| City, State, Zip Code | | |
| Area Code/Telephone No. | | |
| Relationship to Borrower | | |

## SECTION B: SCHOOL INFORMATION – TO BE COMPLETED BY THE SCHOOL

8. School Name and Address   BAYLOR UNIVERSITY
500 SPEIGHT AVENUE
WACO , TX  767981458

9. School Code/Branch   G03545

10. Identification No.   508252556M12G03545999

## SECTION C: BORROWER REQUEST, CERTIFICATIONS, AUTHORIZATIONS, AND UNDERSTANDINGS – READ CAREFULLY BEFORE SIGNING BELOW

11. This is a Master Promissory Note (MPN) for one or more Federal Direct Stafford/Ford (Direct Subsidized) Loans and/or Federal Direct Unsubsidized Stafford/Ford (Direct Unsubsidized) Loans. I request a total amount of Direct Subsidized Loans and/or Direct Unsubsidized Loans under this MPN not to exceed the allowable maximums under the Act ("the Act" is defined in Section E under Governing Law). My school will notify me of the loan type and loan amount that I am eligible to receive. I may cancel a loan or request a lower amount by contacting my school. Additional information about my right to cancel a loan or request a lower amount is included in the Borrower's Rights and Responsibilities Statement and in the disclosure statements that will be provided to me.

12. Under penalty of perjury, I certify that:

A. The information I have provided on this MPN and as updated by me from time to time is true, complete, and correct to the best of my knowledge and belief and is made in good faith.

B. I will use the proceeds of loans made under this MPN for authorized educational expenses that I incur and I will immediately repay any loan proceeds that cannot be attributed to educational expenses for attendance on at least a half-time basis at the school that certified my loan eligibility.

C. If I owe an overpayment on a Federal Perkins Loan, Federal Pell Grant, Federal Supplemental Educational Opportunity Grant, Academic Competitiveness Grant (ACG), National Science or Mathematics Access to Retain Talent (SMART) Grant, or Leveraging Educational Assistance Partnership Grant, I have made satisfactory arrangements to repay the amount owed.

D. If I am in default on any loan received under the Federal Perkins Loan Program (including National Direct Student Loans), the William D. Ford Federal Direct Loan (Direct Loan) Program, or the Federal Family Education Loan (FFEL) Program, I have made satisfactory repayment arrangements with the holder to repay the amount owed.

E. If I have been convicted of, or pled nolo contendere(no contest) or guilty to, a crime involving fraud in obtaining funds under title IV of the Higher Education Act of 1965 (HEA), as amended, I have completed the repayment of the funds to the U.S. Department of Education (ED) or to the loan holder in the case of a Title IV federal student loan.

13. For each Direct Subsidized Loan and Direct Unsubsidized Loan I receive under this MPN, I make the following authorizations:

A. I authorize my school to certify my eligibility for the loan.

B. I authorize my school to credit my loan proceeds to my student account at the school.

C. I authorize my school to pay to ED any refund that may be due up to the full amount of the loan.

D. I authorize ED to investigate my credit record and report information about my loan status to persons and organizations permitted by law to receive that information.

E. I authorize ED to investigate my credit record and report information about my loan status to persons and organizations permitted by law to receive that information.

F. I authorize my school and ED to release information about my loan to the references on the loan and to members of my immediate family, unless I submit written directions otherwise.

G. I authorize my schools, lenders and guarantors, ED, and their agents to release information about my loan to each other.

H. I authorize my schools, ED, and their respective agents and contractors to contact me regarding my loan request or my loan, including repayment of my loan, at the current or any future number that I provide for my cellular telephone or other wireless device using automated dialing equipment or artificial or prerecorded voice or text messages.

14. I will be given the opportunity to pay the interest that ED charges during grace, in school, deferment, forbearance, and other periods as provided under the Act, including during in-school deferment periods. Unless I pay the interest, I understand that ED may add unpaid interest that is charged on each loan made under this MPN to the principal balance of that loan (this is called "capitalization") at the end of the grace, deferment, forbearance, or other period. Capitalization will increase the principal balance on my loan and the total amount of interest I must pay.

15. I understand that ED has the authority to verify information reported on this MPN with other federal agencies.

## SECTION D: PROMISE TO PAY

16. I promise to pay to ED all loan amounts disbursed under the terms of this MPN, plus interest and other charges and fees that may become due as provided in this MPN. I understand that more than one loan may be made to me under this MPN. I understand that by accepting any disbursement issued at any time under this MPN, I agree to repay the loan associated with that disbursement. I understand that, within certain timeframes, I may cancel or reduce the amount of a loan by refusing to accept or by returning all or a portion of any disbursement that is issued. Unless I make interest payments, interest that ED charges on my loans during grace, in-school, deferment, forbearance, and other periods will be added to the principal balance of the loan as provided under the Act. If I do not make a payment on a loan made under this MPN when it is due, I will also pay reasonable collection costs, including but not limited to attoney's fees, court costs, and other fees. I will not sign this MPN before reading the entire MPN, even if I am told not to read it, or told that I am not required to read it. I am entitled to an exact copy of this MPN and the Borrower's Rights and Responsibilities Statement. My signature certifies that I have read, understand, and agree to the terms and conditions of this MPN, including the Borrower Request, Certifications, Authorizations, and Understanding in Section C, the Notice About Subsequent Loans Made Under this MPN in Section E, and the terms and conditions described in Section E of this MPN and in the Borrower's Rights and Responsibilities Statement.

**I UNDERSTAND THAT I MAY RECEIVE ONE OR MORE LOANS UNDER THIS MPN, AND THAT I MUST REPAY ALL LOANS THAT I RECEIVE UNDER THIS MPN.**

17. Borrower's Signature  Ashley N Morgan

18. Today's Date (mm-dd-yyyy)  07/08/2011

# Direct Subsidized Loan and Direct Unsubsidized Loan MPN *(continued)*

**SECTION E: MPN TERMS AND CONDITIONS**

**GOVERNING LAW**

The terms of this Application and Master Promissory Note (MPN) will be interpreted in accordance with the Higher Education Act of 1965, as amended (20. U.S.C. 1070.), the U.S. Department of Education's (ED's) regulations, as they may be amended in accordance with their effective date, and other applicable federal laws and regulations (collectively referred to as the "Act"). Applicable state law, except as preempted by federal law, may provide for certain borrower rights, remedies, and defenses in addition to those stated in this MPN.

**DISCLOSURE OF LOAN TERMS**

This MPN applies to Federal Direct Stafford/Ford (Direct Subsidized) Loans and Federal Direct Unsubsidized Stafford/Ford (Direct Unsubsidized) Loans. Under this MPN, the principal amount that I owe, and am required to repay, will be the sum of all disbursements that are made (unless I reduce or cancel any disbursements as explained below under Loan Cancellation), plus any unpaid interest that is capitalized and added to the principal amount.

At or before the time of the first disbursement of each loan, a disclosure statement will be sent to me identifying the amount of the loan and additional terms of the loan. Important additional information is also contained in the Borrower's Rights and Responsibilities Statement a companying this MPN. The Borrower's Rights and Responsibilities Statement and any disclosure statement I receive in connection with any loan under this MPN are hereby incorporated into this MPN.

Loans disbursed under this MPN are subject to the annual and aggregate loan limits specified under the Act. I may request additional loan funds to pay for my educational costs up to the annual and aggregate loan limits by contacting my school's financial aid office. My school will determine if I am eligible for any additional loan funds. I will be notified of any increase or other change in the amount of my loan.

My eligibility for Direct Subsidized Loans and Direct Unsubsidized Loans may increase or decrease based on changes in my financial circumstances. My school will notify me of any changes in my eligibility. I will be notified of any increase or decrease in the amount of my loan.

I understand that each loan made under this MPN is separately enforceable based on a true and exact copy of this MPN.

**LOAN CANCELLATION**

I may pay back all or part of a disbursement within the timeframes set by the Act, as explained in the Borrower's Rights and Responsibilities Statement and in a disclosure statement that I will receive. If I return the full loan amount within those timeframes, I will not incur any loan fee or interest charges. If I return part of a disbursement within those timeframes, the loan fee and interest charges will be reduced in proportion to the amount returned.

**INTEREST**

Unless ED notifies me in writing of a lower rate, the interest rate for any loan I receive under this MPN is determined using a formula specified in the Act. As explained in the Borrower's Rights and Responsibilities Statement, I will be notified of the actual interest rate for each loan that I receive.

ED does not charge interest on a Direct Subsidized Loan during an in-school, grace, or deferment period, and during certain periods of repayment under the Income-Based Repayment Plan. ED charges interest on a Direct Subsidized Loan during all other periods (including forbearance periods), starting on the day after my grace period ends. ED charges interest on a Direct Unsubsidized Loan during all periods (including in-school, grace, deferment, and forbearance periods), starting on the date of the first disbursement. I agree to pay all interest that is charged to me. I will be given the opportunity to pay the interest that accrues during grace, in-school, deferment, forbearance, or other periods as provided under the Act.

If I do not pay the interest, I understand that ED may capitalize the interest at the end of the grace, deferment, forbearance, or other period.

**LOAN FEE**

A loan fee is charged for each Direct Subsidized Loan and Direct Unsubsidized Loan as provided by the Act, and will be deducted proportionately from each disbursement of each of my loans. The loan fee will be shown on disclosure statements that will be issued to me. I understand the loan fee may be refundable only as permitted by the Act.

**LATE CHARGES AND COLLECTION COSTS**

ED could collect from me: (1) a late charge of not more than six cents for each dollar of each late payment if I fail to make any part of a required installment payment within 30 days after it becomes due, and (2) any other charges and fees that are permitted by the Act related to the collection of my loans. If I default on my loans, I will pay reasonable collection costs, plus court costs and attorney fees.

**GRACE PERIOD**

I will receive a six-month grace period on repayment of each loan made under this MPN. The grace period begins the day after I cease to be enrolled at least half-time at an eligible school. I am not required to make any payments on my loan during the grace period. However, interest will accrue on my Direct Unsubsidized Loan during the grace period and will be capitalized if I do not repay it.

**REPAYMENT**

I must repay the full amount of the loans made under this MPN, plus accrued interest. I will repay each loan in monthly installments during a repayment period that begins on the day immediately following my 6-month grace period on that loan. Payments made by me on my behalf will be applied first to late charges and collection costs that are due, then to interest that has not been paid, and finally to the principal amount of the loan, except during periods of repayment under an Income-Based Repayment Plan, when payments will be applied first to interest that is due, then to fees that are due, and then to the principal amount.

ED will provide me with a choice of repayment plans. Information on these repayment plans is included in the Borrower's Rights and Responsibilities Statement.

ED will provide me with a repayment schedule that identifies my payment amounts and due dates. If I am unable to make my scheduled loan payments, ED may allow me to temporarily stop making payments, reduce my payment amount, or extend the time for making payments, as long as I intend to repay my loan. Allowing me to temporarily delay or reduce loan payments is called forbearance.

ED may adjust payment dates on my loans or may grant me forbearance to eliminate a delinquency that remains even though I am making scheduled installment payments.

I may prepay all or any part of the unpaid balance on my loans at any time without penalty. If I do not specify which loans I am prepaying, ED will determine how to apply the prepayment in accordance with the Act. After I have repaid in full a loan made under this MPN, ED will send me a notice telling me that I have paid off my loan.

**ACCELERATION AND DEFAULT**

At ED's option, the entire unpaid balance of a loan made under this MPN will become immediately due and payable (this is called "acceleration") if any one of the following events occurs: at least a half-time student at the school that certified my loan eligibility; (2) I do not use the proceeds of the loan solely for my educational expenses; (3) I make a false represent ation that results in my receiving a loan for which I am not eligible; or (4) I default on the loan.

The following events will constitute a default on my loan: (1) I do not pay the entire unpaid balance of the loan after ED has exercised its option under items (1), (2), and (3) in the preceding paragraph; (2) I do not make installment payments when due, provided my failure has persisted for at least 270 days; or (3) I do not comply with other terms of the loan, and ED reasonably concludes that I no longer intend

to honor my repayment obligation. If I default, ED may capitalize all the outstanding interest into a new principal balance, and collection costs will become immediately due and payable.

If I default, the default will be reported to national consumer reporting agencies and will significantly and adversely affect my credit history. I understand that a default will have additional adverse consequences to me as disclosed in the Borrower's Rights and Responsibilities Statement.

**LEGAL NOTICES**

Any notice required to be given to me will be effective if mailed by first class mail to the most recent address ED has for me. I will immediately notify ED of a change of address or status as specified in the Borrower's Rights and Responsibilities Statement.

If ED fails to enforce or insist on compliance with any term of this MPN, this does not waive any right of ED. No provision of this MPN may be modified or waived except in writing by ED. If any provision of this MPN is determined to be unenforceable, the remaining provisions will remain in force.

Information about my loans will be submitted to the National Student Loan Data System (NSLDS). Information in NSLDS is accessible to schools, lenders, and guarantors for specific purposes as authorized by ED.

---

**NOTICE ABOUT SUBSEQUENT LOANS MADE UNDER THIS MPN**

This MPN authorizes ED to disburse multiple loans to me to pay my educational expenses during the multi-year term of this MPN, upon my request and upon my school's annual certification of my loan eligibility.At schools that are authorized to use the multi-year feature of the MPN and choose to do so, subsequent loans may be made under this MPN for subsequent academic years. At any school, subsequent loans may be made under this MPN for the same academic year.

I understand that no subsequent loans will be made under this MPN after the earliest of the following dates: (1) the date ED or my school receives my written notice that no further loans may be made; (2) one year after the date I sign the MPN or the date ED receives the MPN if no disbursements are made under the MPN; or (3) ten years after the date I sign the MPN or the date ED receives the MPN. Any amendment to the Act governs the terms of any loan disbursed on or after the effective date of the amendment, and any amended terms are considered part of this MPN.

*Revised 03/2009*

# Direct Subsidized Loan and Direct Unsubsidized Loan MPN *(continued)*

*This is a Master Promissory Note (MPN) under which you may receive multiple Direct Subsidized Loans and/or Direct Unsubsidized Loans over a maximum ten-year period.*

*Print using a blue or black ink ballpoint pen or type. Do not use pebcil. Report all dates as month-day-year (mm-dd-yyyy). Use only numbers. Example: June 24, 1982 = 06-24-1982.*

*Some of the items in Section A may have been completed for you. If so, review these items carefully to make sure that the information is correct. Cross out any information that is incorrect and enter the correct information. Put your initials next to any information that you change.*

## SECTION A: BORROWER INFORMATION

**Item 1.**  Enter the two-letter abbreviation for the state that issued your current driver's license, followed by your driver's license number. If you do not have a driver's license, enter N/A.

**Item 2.**  Enter your nine-digit Social Security Number.

**Item 3.**  Enter your preferred e-mail address for receiving communications. You are not required to provide this information. If you do, we may use your e-mail address to communicate with you. If you do not have an e-mail address or do not wish to provide one, enter N/A.

**Item 4.**  Enter your last name, then your first name and middle initial. Enter your permanent address (number, street, apartment number, or rural route number and box number, then city, state, zip code). If your mailing address is a post office box or general delivery, you must list both your street address and your mailing address. A temporary school address is not acceptable.

**Item 5.**  Enter your date of birth.

**Item 6.**  Enter the area code and telephone number at which you can most easily be reached. If you do not have a telephone, enter N/A.

**Item 7.**  Enter the requested information for two adults with different U.S addresses who have known you for at least three years. The first reference should be a parent or legal guardian. References who live outside the United States are not acceptable. If a reference does not have a telephone number, enter N/A.

## SECTION B: SCHOOL INFORMATION

*This section will be completed by the school that certifies your loan eligibility.*

## SECTION C: BORROWER REQUEST, CERTIFICATIONS, AUTHORIZATIONS, AND UNDERSTANDINGS

**Items 11, 12, 13, 14, and 15.**  Read these items carefully.

## SECTION D: PROMISE TO PAY

**Item 16.**  Read this item carefully.

**Items 17 and 18.**  Sign your full legal name, in blue or black ink, and enter the date you signed this MPN.

By signing this MPN, you:

(1) Acknowledge that you have read, understand, and agree to the terms and conditions of the MPN, including the Borrower Request, Certifications, Authorizations, and Understanding in Section C and the accompanying Borrower's Rights and Responsibilities Statement; and

(2) Agree to repay the loan(s) in full according to the terms and conditions of the MPN.

### GRAMM-LEACH-BLILEY ACT NOTICE

In 1999, Congress enacted the Gramm-Leach-Bliley Act (Public Law 106-102). This Act requires that lenders provide certain information to their customers regarding the collection and use of nonpublic personal information.

We disclose nonpublic personal information to third parties only as necessary to process and service your loan and as permitted by the Privacy Act of 1974. See the Privacy Act Notice below. We do not sell or otherwise make available any information about you to any third parties for marketing purposes.

We protect the security and confidentiality of nonpublic personal information by implementing the following policies and practices. All physical access to the sites where nonpublic personal information is maintained is controlled and monitored by security personnel. Our computer systems offer a high degree of resistance to tampering and circumvention. These systems limit data access to our staff and contract staff on a "need-to-know" basis, and control individual users' ability to access and alter records within the systems. All users of these systems are given a unique user ID with personal identifiers. All interactions by individual users with the systems are recorded.

### PRIVACY ACT NOTICE

**The Privacy Act of 1974 (5 U.S.C. 552a) requires that the following notice be provided to you:**

The authority for collecting the requested information from and about you is §451 of the Higher Education Act (HEA) of 1965, as amended (20 U.S.C. 1087a et seq.) and the authorities for collecting and using your Social Security Number (SSN) are §484(a)(4) of the HEA (20 U.S.C. 1091(a)(4)) and 31 U.S.C. 7701(b). Participating in the William D. Ford Federal Direct Loan (Direct Loan) Program and giving us your SSN are voluntary, but you must provide the requested information, including your SSN, to participate.

The principal purposes for collecting the information on this form, including your SSN, are to verify your identity, to determine your eligibility to receive a loan or a benefit on a loan (such as a deferment, forbearance, discharge, or forgiveness) under the Direct Loan Program, to permit the servicing of your loan(s), and, if it becomes necessary, to locate you and to collect and report on your loan(s) if your loan(s) become delinquent or in default. We also use your SSN as an account identifier and to permit you to access your account information electronically.

The information in your file may be disclosed, on a case-by-case basis or under a computer matching program, to third parties as authorized under routine uses in the appropriate systems of records notices. The routine uses of this information include, but are not limited to, its disclosure to federal, state, or local agencies, to private parties such as relatives, present and former employers, business and personal associates, to consumer reporting agencies, to finacial and educational institutions, and to guaranty agencies in order to verify your identity, to determine your eligibility to receive a loan or a benefit on a loan, to permit the servicing or collection of your loan(s), to enforce the terms of the loan(s), to investigate possible fraud and to verify compliance with federal student financial aid program regulations, or to locate you if you become delinquent in your loan payments or if you default. To provide default rate calculations, disclosures may be made to guaranty agencies, to financial and educational institutions, or to state agencies. To provide financial aid history information, disclosures may be made to educational institutions. To assist program administrators with tracking refunds and cancellations, disclosures may be made to guaranty agencies, to financial and educational institutions, or to federal or state agencies. To provide a standardized method for educational institutions to efficiently submit student enrollment status, disclosures may be made to guaranty agencies or to financial and educational institutions. To counsel you in repayment efforts, disclosures may be made to guaranty agencies, to financial and educational institutions, or to federal, state, or local agencies.

In the event of litigation, we may send records to the Department of Justice, a court, adjudicative body, counsel, party, or witness if the disclosure is relevant and necessary to the litigation. If this information, either alone or with other information, indicates a potential violation of law, we may send it to the appropriate authority for action. We may send information to members of Congress if you ask them to help you with federal student aid questions. In circumstances involving employment complaints, grievances, or disciplinary actions, we may disclose relevant records to adjudicate or investigate the issues. If provided for by a collective bargaining agreement, we may disclose records to a labor organization recognized under 5 U.S.C. Chapter 71. Disclosures may be made to our contractors for the purpose of performing any programmatic function that requires disclosure of records. Before making any such disclosure, we will require the contractor to maintain Privacy Act safeguards. Disclosures may also be made to qualified researchers under Privacy Act safeguards.

### FINANCIAL PRIVACY ACT NOTICE

Under the Right to Financial Privacy Act of 1978 (12 U.S.C. 3401-3421), ED will have access to financial records in your student loan file maintained in compliance with the administration of the Direct Loan Program.

### PAPERWORK REDUCTION NOTICE

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a currently valid OMB control number. The valid OMB control number for this information collection is 1845-0007. The time required to complete this information collection is estimated to average 0.5 hours (30 minutes) per response, including the time to review instructions, search existing data sources, gather and maintain the data needed, and complete and review the information. If you have any comments concerning the accuracy of the time estimate(s) or suggestions for mproving the form, please write to: U.S. Department of Education, Washington, DC 20202-4537.

If you have any comments or concerns regarding the status of your individual submission of this form, write directly to:

U.S. Department of Education

Common Origination and Disbursement School Relations Center

Attn: Applicant Services

PO Box 9002

Niagara Falls, NY 14302

# William D. Ford Federal Direct Loan Program
# Direct Unsubsidized Loan Borrower's Rights and Responsibilities Statement

*Important Notice: This Borrower's Rights and Responsibilities Statement provides additional information about the terms and conditions of the loans you receive under the accompanying Master Promissory Note (MPN) for Federal Direct Stafford/Ford Loans (Direct Subsidized Loans) and Federal Direct Unsubsidized Stafford/Ford Loans (Direct Unsubsidized Loans). Please keep this Borrower's Rights and Responsibilities Statement for your records. You may request another copy of this Borrower's Rights and Responsibilities Statement at any time by contacting the Direct Loan Servicing Center.*

*Throughout this Borrower's Rights and Responsibilities Statement, the words "we," "us," and "our" refer to the U.S.Department of Education. The word "loan" refers to one or more loans made under the accompanying MPN.*

**1. The William D. Ford Federal Direct Loan Program.** The William D. Ford Federal Direct Loan (Direct Loan) Program includes the following types of loans, known collectively as "Direct Loans":

- Federal Direct Stafford/Ford Loans (Direct Subsidized Loans)
- Federal Direct Unsubsidized Stafford/Ford Loans (Direct Unsubsidized Loans)
- Federal Direct PLUS Loans (Direct PLUS Loans)
- Federal Direct Consolidation Loans (Direct Consolidation Loans)

The Direct Loan Program is authorized by Title IV, Part D, of the Higher Education Act of 1965, as amended.

You must complete a Free Application for Federal Student Aid (FAFSA) before you receive a Direct Subsidized Loan or Direct Unsubsidized Loan.

Direct Loans are made by the U.S. Department of Education. Our Direct Loan Servicing services, answers questions about, and processes payments on Direct Loans. We will provide you with the address and telephone number of the Loan Servicing Center after the school notifies us that the first disbursement of your loan has been made.

**2. Laws that apply to this MPN.** The terms and conditions of loans made under this MPN are determined by the Higher Education Act of 1965, as amended (20 U.S.C. 1070 et seq.) and other applicable federal laws and regultions. These laws and regulations are referred to as "the Act" throughout this Borrower's Rights and Responsibilities Statement. State law, unless it is preempted by federal law, may provide you with certain rights, remedies, and defenses in addition to those stated in the MPN and this Borrower's Rights and Responsibilities Statement.

**NOTE: Any change to the Act applies to loans in accordance with the effective date of the change.**

**3. Direct Subsidized Loans and Direct Unsubsidized Loans.** Direct Subsidized Loans and Direct Unsubsidized Loans are made to students to help pay for the cost of education beyond high school. To receive a Direct Subsidized Loan, you must have financial need. We do not charge interest on Direct Subsidized Loans while you are in school and during certain other periods. Direct Unsubsidized Loans are not based on financial need. We charge interest on Direct Unsubsidized Loans during all periods. For more information on interest charges, see item #9 of this Borrower's Rights and Responsibilities Statement ("Payment of interest").

**4. About the MPN.** You may receive more than one loan under this MPN over a period of up to 10 years to pay for your educational costs, as long as the school you are attending is authorized to use the multi-year feature of the MPN and chooses to do so.

If your school is not authorized to use the multi-year feature of the MPN or chooses not to do so, or if you do not want to receive more than one loan under this MPN, you must sign a new MPN for each loan that you rceive.

If you do not want to receive more than one loan under this MPN, you must notify your school or the Direct Loan Servicing Center in writing.

**5. Use of your loan money.** You may use the loan money you receive only to pay for your authorized educational expenses for attendance at the school that determined you were eligible to receive the loan. Authorized expenses include the following:

- Tuition
- Room
- Board
- Institutional fees
- Books
- Supplies
- Equipment
- Dependent child care expenses
- Transportation
- Commuting expenses
- Rental or purchase of a personal computer
- Loan fees
- Other documented, authorized costs

**6. Information you must report to us after you receive your loan.** You must notify the Direct Loan Servicing Center and/or the financial aid office at your school about certain changes.

Until you graduate or otherwise leave school, you must notify your school's financial aid office if you:

- Change your address or telephone number;
- Change your name (for example, maiden name to married name);
- Do not enroll at least half-time for the loan period certified by the school
- Do not enroll at the school that determined you were eligible to receive the loan;
- Stop attending school or drop below half-time enrollment;
- Transfer from one school to another school; or
- Graduate.

You must also notify the Direct Loan Servicing Center if any of the above events occur at any time after you receive your loan. In addition, you must notify the Direct Loan Servicing Center if you:

- Change your employer, or your employer's address or telephone number changes; or
- Have any other change in status that would affect your loan (for example, if you received a deferment while you were unemployed, but you have found a job and therefore no longer meet the eligibility requirements for the deferment).

**7. Amount you may borrow.** The charts that follow show the maximum amounts of Direct Subsidized Loans and Direct Unsubsidized Loans that you may borrow for a single academic year (annual loan limits), and the maximum amounts that you may borrow in total for undergraduate and graduate study (aggregate loan limits). The annual and aggregate loan limits for independent undergraduates also apply to dependent undergraduates whose parents are unable to borrow under the PLUS program. If you are enrolled in certain health professions programs, you may qualify for higher annual and aggregate limits on Direct Unsubsidized Loans.

The actual loan amount you receive will be determined by your school, based on your academic level, dependency status, and other factors such as:

- The length of the program or the remaining portion of the program in which you are enrolled, if it is less than a full academic year;
- Your cost of attendance;
- Your Expected Family Contribution;
- Other financial aid you receive; and
- Your remaining eligibility under the annual or aggregate loan limits.

The actual amount you receive for an academic year may be less than the maximum annual amounts shown in the charts.

If you are an undergraduate student, your school must determine your eligibility for a Federal Pell Grant before you may receive a Direct Subsidized Loan or Direct Unsubsidized Loan. Your school is also required to determine your eligibility for a Direct Subsidized Loan before determining your eligibility for a Direct Unsubsidized Loan.

If you have received student loans from another federal student loan program, you are responsible for informing your school and your lender of your other student loans. In some cases, you may not be eligible for loans for which you have applied.

**Annual Loan Limits for Direct Subsidized Loans and Direct Unsubsidized Loans:**

| **Dependent Undergraduate Students (*except* students whose parents cannot borrow PLUS loans)** | |
|---|---|
| First Year Total (maximum $3,500 subsidized) | $5,500 |
| Second Year Total (maximum $4,500 subsidized) | $6,500 |
| Third Year and Beyond (each year) (maximum $5,500 subsidized) | $7,500 |
| **Independent Undergraduate Students (and dependent students whose parents cannot borrow PLUS loans)** | |
| First Year Total (maximum $3,500 subsidized) | $9,500 |
| Second Year (maximum $4,500 subsidized) | $10,500 |
| Third Year and Beyond (each year) (maximum $5,500 subsidized) | $12,500 |
| **Graduate and Professional Students** | |
| Total Amount (each year) (maximum $8,500 subsidized) | $20,500 |

**Aggregate Loan Limits for Direct Subsidized and Direct Unsubsidized Loans:**

| **Dependent Undergraduate Students (*except* students whose parents cannot borrow PLUS loans)** | |
|---|---|
| Total Amount Cumulative (maximum $23,000 subsidized) | $31,000 |
| **Independent Undergraduate Students (and dependent students whose parents cannot borrow PLUS loans)** | |
| Total Amount Cumulative (maximum $23,000 subsidized) | $57,500 |
| **Graduate and Professional Students** | |
| Total Amount Cumulative (maximum $65,500 subsidized; includes Stafford Loans received for undergraduate study) | $138,500 |

**8. Interest rate.** The interest rate on Direct Subsidized Loans and Direct Unsubsidized Loans is a fixed rate. Different fixed interest rates may apply to separate loans made under this MPN depending on whether the loan is subsidized or unsubsidized, when the loan is first disbursed, and whether you are a graduate or undergraduate student. You will be notified of the actual interest rate for each loan you receive in a disclosure statement that we send to you. If you qualify under

# William D. Ford Federal Direct Loan Program
# Direct Unsubsidized Loan Borrower's Rights and Responsibilities Statement

the Servicemembers Civil Relief Act, the interest rate on your loans obtained prior to military service may be limited to 6 percent during your military service. To receive this benefit, you must contact the Direct Loan Servicing Center for information about the documentation you must provide to show that you qualify.

**9. Payment of interest.** We do not charge interest on a Direct Subsidized Loan while you are enrolled in school at least half -time, during your grace period, during deferment periods, and during certain periods of repayment under the Income-Based Repayment Plan. Except as provided below for certain military borrowers, we charge interest on a Direct Subsidized Loan during all other periods (starting on the day after your grace period ends), including forbearance periods.

Except as provided below for certain military borrowers, we charge interest on a Direct Unsubsidized Loan during all periods (starting on the day your loan is paid out). This includes periods while you are enrolled in school at least half- time, during your grace period, and during deferment and forbearance periods. Therefore, you will pay more interest on a Direct Unsubsidized Loan than on a Direct Subsidized Loan.

If you do not pay the interest as it is charged on either type of loan, we will add it to the unpaid principal amount of your loan. This is called "capitalization." Capitalization increases the unpaid principal balance of your loan, and we will then charge interest on the increased principal amount.

Under the no accrual of interest benefit for active duty service members, we do not charge interest on Direct Loan Program Loans first disbursed on or after October 1, 2008 during periods of qualifying active duty military service (for up to 60 months). For Direct Consolidation Loans, this benefit applies to the portion of the consolidation loan that repaid loans first disbursed on or after October 1, 2008.

The chart below shows the difference in the total amount you would repay on a $15,000 Direct Unsubsidized Loan if you pay the interest as it is charged during a 12-month deferment or forbearance period, compared to the amount you would repay if you do not pay the interest and it is capitalized.

| | If you pay the interest as it is charged… | If you do not pay the interest and it is capitalized… |
|---|---|---|
| **Loan Amount** | $15,000 | $15,000 |
| **Interest for 12 months (at an interest rate of 6.8%)** | $1,020 (paid as accrued) | $1,020 (unpaid and capitalized) |
| **Principal to be Repaid** | $15,000 | $16,020 |
| **Monthly Payment (Standard Repayment Plan)** | $173 | $184 |
| **Number of Payments** | 120 | 120 |
| **Total Amount Repaid** | $21,734 | $22,123 |

In this example, you would pay $11 less per month and $389 less altogether if you pay the interest as it is charged during a 12-month deferment or forbearance period.

You may be able to claim a federal income tax deduction for interest payments you make on Direct Loans. For further information, refer to IRS Publication 970, which is available at http://www.irs.ustreas.gov.

**10. Loan fee.** We charge a loan fee that is a percentage of the principal amount of each loan you receive. The percentage is determined by the Act and varies depending on when a loan is first disbursed. The specific loan fee that you are charged will be shown on a disclosure statement that we send to you. This fee will be subtracted proportionally from each disbursement of your loan.

**11. Repayment incentive programs.** A repayment incentive is a benefit that we offer to encourage you to repay your loan on time. Under a repayment incentive program, the interest rate we charge on your loan may be reduced. Some repayment incentive programs require you to make a certain number of payments on time to keep the reduced interest rate. The two repayment incentive programs described below may be available to you. The DirectLoanServicingCenter can provide you with more information on other repayment incentive programs that may be available.

*(1) Interest Rate Reduction for Electronic Debit Account Repayment*

Under the Electronic Debit Account (EDA) repayment option, your bank automatically deducts your monthly loan payment from your checking or savings account and sends it to us. EDA helps to ensure that your payments are made on time. In addition, you receive a 0.25 percent interest rate reduction while you repay under the EDA option. We will include information about the EDA option in your first bill. You can also get the information on the Direct >Loan Servicing Center's web site, or by calling the Direct Loan Servicing Center. The Direct Loan Servicing Center's web site address and toll-free telephone number are provided on all correspondence that the DirectLoan Servicing Center sends you.

*(2) Up-Front Interest Rebate*

You may receive an up-front interest rebate on your loan. The rebate is equal to a percentage of the loan amount that you borrow. This is the same amount that would result if the interest rate on your loan were lowered by a specific percentage, but you receive the rebate up front. The correspondence that you receive about your loan will tell you if you received an up-front interest rebate.

To keep an up-front interest rebate that you receive on your loan, you must make all of your first 12 required monthly payments on time when your loan enters repayment. "On time" means that we must receive each payment no later than 6 days after the due date.

You will lose the rebate if you do not make all of your first 12 required monthly payments on time. If you lose the rebate, we will add the rebate amount back to the principal balance on your loan account. This will increase the amount that you must repay.

**12. Disbursement (how your loan money will be paid out).** Generally, your school will disburse (pay out) your loan money in more than one installment, usually at the beginning of each academic term (for example, at the beginning of each semester or quarter). If your school does not use academic terms or does not have academic terms that meet certain requirements, it will generally disburse your loan in at least two installments, one at the beginning of the period of study for which you are receiving the loan, and one at the midpoint of that period of study.

In most cases, if the Direct Subsidized Loan or Direct Unsubsidized Loan that you are receiving is your first student loan under either the Direct Loan Program or the Federal Family Education Loan (FFEL) Program,

you must complete entrance counseling before your school can make the first disbursement of your loan.

Your school may disburse your loan money by crediting it to your account at the school, or may give some or all of it to you directly by check or other means. The DirectLoanServicingCenter will notify you in writing each time your school disburses part of your loan money.

If your school credits your loan money to your account and the amount credited is more than the amount of your tuition and fees, room and board, and other authorized charges, the excess amount is called a credit balance. Unless you authorize your school to hold the credit balance for you, your school must pay you the credit balance within the following timeframes:

- If the credit balance occurs after the first day of class of a payment period (your school can tell you this date), your school must pay you the credit balance no later than 14 days after the date the balance occurs.

- If the credit balance occurs on or before the first day of class of a payment period, your school must pay you the credit balance no later than 14 days after the first day of class of the payment period.

**13. Canceling your loan.** Before your loan money is disbursed, you may cancel all or part of your loan at any time by notifying your school. After your loan money is disbursed, there are two ways to cancel all or part of your loan:

- If your school obtains your written confirmation of the types and amounts of Title IV loans that you want to receive for an award year before crediting loan money to your account at the school, you may tell the school that you want to cancel all or part of that loan within 14 days after the date the school notifies you of your right to cancel all or part of the loan, or by the first day of your school's payment period, whichever is later (your school can tell you the first day of the payment period). If the school does not obtain your written confirmation of the types and amounts of loans you want to receive before crediting the loan money to your account, you may cancel all or part of that loan by informing the school within 30 days of the date the school notifies you of your right to cancel all or part of the loan. In either case, your school will return the cancelled loan amount to us. You do not have to pay interest or the loan fee on the part of your loan that you tell your school to cancel within these timeframes. If you received an up-front interest rebate on your loan, the rebate does not apply to the part of your loan that you tell your school to cancel. Your loan will be adjusted to eliminate any interest, loan fee, and rebate amount that applies to the amount of the loan that was cancelled.

If you ask your school to cancel all or part of your loan outside the timeframes described above, your school may process your cancellation request, but it is not required to do so.

- Within 120 days of the date your school disbursed your loan money (by crediting the loan money to your account at the school, by paying it directly to you, or both), you may return all or part of your loan to us. Contact the DirectLoanServicingCenter for guidance on how and where to return your loan money. You do not have to pay interest or the loan fee on the part of your loan that you return within 120 days of the date that part of your loan is disbursed. If you received an up-front interest rebate on your loan, the rebate does not apply to the part of your loan that you return. Your loan will be adjusted to eliminate any interest, loan fee, and rebate amount that applies to the amount of the loan that you return.

# William D. Ford Federal Direct Loan Program
## Direct Unsubsidized Loan Borrower's Rights and Responsibilities Statement

**14. Grace period.** You will receive a six-month grace period on repayment of each Direct Subsidized Loan and Direct Unsubsidized Loan that you receive. Your six-month grace period begins the day after you stop attending school or drop below half-time enrollment. You do not have to begin making payments on your loan until after your grace period ends.

If you are called or ordered to active duty for more than 30 days from a reserve component of the U.S. Armed Forces, the period of your active duty service and the time necessary for you to re-enroll in school after your active duty ends are not counted as part of your grace period. However, the total period that is excluded from your grace period may not exceed three years. If the call or order to active duty occurs while you are in school and requires you to drop below half-time enrollment, the start of your grace period will be delayed until after the end of the excluded period. If the call or order to active duty occurs during your grace period, you will receive a full six-month grace period at the end of the excluded period.

**15. Repaying your loan.** The repayment period for each Direct Subsidized Loan and Direct Unsubsidized Loan that you receive begins on the day after your grace period ends. The DirectLoanServicingCenter will notify you of the date your first payment is due.

You must make payments on your loan even if you do not receive a bill or repayment notice. Billing information is sent to you as a convenience, and you are obligated to make payments even if you do not receive a notice or bill.

You may choose one of the following repayment plans to repay your loan:

- **Standard Repayment Plan** – Under this plan, you will make fixed monthly payments and repay your loan in full within 10 years (not including periods of deferment or forbearance) from the date the loan entered repayment. Your payments must be at least $50 a month and will be more, if necessary, to repay the loan within the required time period.

- **Graduated Repayment Plan** – Under this plan, you will usually make lower payments at first, and your payments will gradually increase over time. You will repay your loan in full within 10 years (not including periods of deferment or forbearance) from the date the loan entered repayment. No single payment will be more than three times greater than any other payment.

- **Extended Repayment Plan** – Under this plan, you will repay your loan in full over a period not to exceed 25 years (not including periods of deferment or forbearance) from the date the loan entered repayment. You may choose to make fixed monthly payments or graduated monthly payments that start out lower and gradually increase over time. If you make fixed monthly payments, your payments must be at least $50 a month and will be more, if necessary, to repay the loan within the required time period. You are eligible for this repayment plan only if (1) you have an outstanding balance on Direct Loan Program loans that exceeds $30,000, and (2) you had no outstanding balance on a Direct Loan Program loan as of October 7, 1998 or on the date you obtained a Direct Loan Program loan after October 7, 1998.

- **Income Contingent Repayment Plan** – Under this plan, your monthly payment amount will be based on your annual income (and that of your spouse if you are married), your family size, and the total amount of your Direct Loans. Until we obtain the information needed to calculate your monthly payment amount, your payment will equal the amount of interest that has accrued on your loan unless you request a forbearance. As your income changes, your payments may change. If you do not repay your loan

after 25 years under this plan, the unpaid portion will be forgiven. You may have to pay income tax on any amount forgiven.

- **Income-Based Repayment Plan (effective July 1, 2009)** – Under this plan, your required monthly payment amount will be based on your income during any period when you have a partial financial hardship. Your monthly payment amount may be adjusted annually. The maximum repayment period under this plan may exceed 10 years. If you meet certain requirements over a 25-year period, you may qualify for cancellation of any outstanding balance on your loans.

If you can show to our satisfaction that the terms and conditions of the above repayment plans are not adequate to meet your exceptional circumstances, we may provide you with an alternative repayment plan.

If you do not choose a repayment plan, we will place you on the Standard Repayment Plan.

The chart at the end of this Borrower's Rights and Responsibilities Statement ("Repaying Your Loans") allows you to estimate the monthly and total amounts you would repay under the Standard, Graduated, Extended, and Income Contingent repayment plans based on various initial loan amounts.

You may change repayment plans at any time after you have begun repaying your loan. There is no penalty if you make loan payments before they are due, or pay more than the amount due each month.

Except as provided by the Act for payments made under the Income-Based Repayment Plan, we apply your payments and prepayments in the following order: (1) late charges and collection costs first, (2) outstanding interest second, and (3) outstanding principal last.

When you have repaid a loan in full, the DirectLoanServicingCenter will send you a notice telling you that you have paid off your loan. You should keep this notice in a safe place.

**16. Late charges and collection costs.** If you do not make any part of a payment within 30 days after it is due, we may require you to pay a late charge. This charge will not be more than six cents for each dollar of each late payment. If you do not make payments as scheduled, we may also require you to pay other charges and fees involved in collecting your loan.

**17. Demand for immediate repayment.** The entire unpaid amount of your loan becomes due and payable (on your MPN it is called "acceleration") if you:

- Receive loan money, but do not enroll at least half-time at the school that determined you were eligible to receive the loan;
- Use your loan money to pay for anything other than expenses related to your education at the school that determined you were eligible to receive the loan;
- Make a false statement that causes you to receive a loan that you are not eligible to receive; or
- Default on your loan.

**18. Defaulting on your loan.** Default (failing to repay your loan) is defined in detail in the Terms and Conditions section of your MPN. If you default:

- We will require you to immediately repay the entire unpaid amount of your loan.
- We may sue you, take all or part of your federal and state tax refunds and other federal or state payments, and/or garnish your wages so that your employer is required to send us part of your salary to pay off your loan.
- We will require you to pay reasonable collection fees and costs, plus court costs and attorney fees.
- You may be denied a professional license.
- You will lose eligibility for other federal student aid and assistance under most federal benefit programs.

- You will lose eligibility for loan deferments.
- We will report your default to national consumer reporting agencies (see #19, "Consumer reporting agency notification").

**19. Consumer reporting agency notification.** We will report information about your loan to national consumer reporting agencies. This information will include the disbursement dates, amount, and repayment status of your loan (for example, whether you are current or delinquent in making payments). Your loan will be identified as an education loan.

If you default on a loan, we will also report this to national consumer reporting agencies. We will notify you at least 30 days in advance that we plan to report default information to a consumer reporting agency unless you resume making payments on the loan within 30 days. You will be given a chance to ask for a review of the debt before we report it.

If a consumer reporting agency contacts us regarding objections you have raised about the accuracy or completeness of any information we have reported, we are required to provide the agency with a prompt response.

**20. Deferment and forbearance (postponing payments)**

If you meet certain requirements, you may receive a **deferment** that allows you to temporarily stop making payments on your loan. If you cannot make your scheduled loan payments, but do not qualify for a deferment, we may give you a **forbearance**. A forbearance allows you to temporarily stop making payments on your loan, temporarily make smaller payments, or extend the time for making payments.

**Deferment**

You may receive a deferment while you are:

- Enrolled at least half-time at an eligible school;
- In a full-time course of study in a graduate fellowship program;
- In an approved full-time rehabilitation program for individuals with disabilities;
- Unemployed (for a maximum of three years; you must be diligently seeking, but unable to find, full-time employment); or
- Experiencing an economic hardship (including Peace Corps service), as determined under the Act (for a maximum of three years).
- Serving on active duty during a war or other military operation or national emergency or performing qualifying National Guard duty during a war or other military operation or national emergency and, if you were serving on or after October 1, 2007, for an additional 180-day period following the demobilization date for your qualifying service.

If you are a member of the National Guard or other reserve component of the U.S. Armed forces (current or retired) and you are called or ordered to active duty while you are enrolled at least half- time at an eligible school or within 6 months of having been enrolled at least half- time, you are also eligible for a deferment during the 13 months following the conclusion of your active duty service, or until you return to enrolled student status on at least a half-time basis, whichever is earlier.

You may be eligible to receive additional deferments if, at the time you received your first Direct Loan, you had an outstanding balance on a loan made under the Federal Family Education Loan (FFEL) Program before July 1, 1993. If you meet this requirement, you may receive a deferment while you are:

- Temporarily totally disabled, or unable to work because you are required to care for a spouse or dependent who is disabled (for a maximum of three years);

*Revised 03/2009*

# William D. Ford Federal Direct Loan Program
# Direct Unsubsidized Loan Borrower's Rights and Responsibilities Statement

- On active duty in the U.S. Armed Forces, on active duty in the National Oceanic and Atmospheric Administration (NOAA), or serving full-time as an officer in the Commissioned Corps of the Public Health Service (for a combined maximum of three years);
- Serving in the Peace Corps (for a maximum of three years);
- A full-time paid volunteer for a tax-exempt organization or an ACTION program (for a maximum of three years);
- In a medical internship or residency program (for a maximum of two years);
- Teaching in a designated teacher shortage area (for a maximum of three years);
- On parental leave (for a maximum of six months); or
- A working mother entering or re-entering the workforce (for a maximum of one year).

You may receive a deferment based on your enrollment in school on at least a half-time basis if (1) you submit a deferment request form to the Direct Loan Servicing Center along with documentation of your eligibility for the deferment, or (2) the Direct Loan Servicing Center receives information from the school you are attending that indicates you are enrolled at least half-time. If the DirectLoanServicingCenter processes a deferment based on information received from your school, you will be notified of the deferment and will have the option of canceling the deferment and continuing to make payments on your loan.

For all other deferments, you (or, for a deferment based on active duty military service or qualifying National Guard duty during a war or other military operation or national emergency, a representative acting on your behalf) must submit a deferment request form to the Direct Loan Servicing Center, along with documentation of your eligibility for the deferment. In certain circumstances, you may not be required to provide documentation of your eligibility if the DirectLoanServicingCenter confirms that you have been granted the same deferment for the same period of time on a FFEL Program loan. The DirectLoanServicingCenter can provide you with a deferment request form that explains the eligibility and documentation requirements for the type of deferment you are requesting. You may also obtain deferment request forms and information on deferment eligibility requirements from the DirectLoanServicingCenter's web site.

If you are in default on your loan, you are not eligible for a deferment.

You are not responsible for paying the interest on a Direct Subsidized Loan during a period of deferment. However, you are responsible for paying the interest on a Direct Unsubsidized Loan during a period of deferment.

## Forbearance

We may give you a forbearance if you are temporarily unable to make your scheduled loan payments for reasons including, but not limited to, financial hardship and illness.

We will give you a forbearance if:

- You are serving in a medical or dental internship or residency program, and you meet specific requirements;
- The total amount you owe each month for all of the student loans you received under Title IV of the Act is 20 percent or more of your total monthly gross income (for a maximum of three years);
- You are serving in a national service position for which you receive a national service award under the National and Community Service Trust Act of 1993. In some cases, the interest that accrues on a qualified loan during the service period will be paid by the Corporation for National and Community Service;
- You are performing service that would qualify you for loan forgiveness under the teacher loan forgiveness program that is available to certain Direct Loan and FFEL program borrowers;
- You qualify for partial repayment of your loans under the Student Loan Repayment Program, as administered by the Department of Defense; or
- You are called to active duty in the U.S. Armed Forces.

To request a forbearance, contact the DirectLoanServicingCenter. The DirectLoanServicingCenter can provide you with a forbearance request form that explains the eligibility and documentation requirements for the type of forbearance you are requesting. You may also obtain forbearance request forms and information on forbearance eligibility requirements from the DirectLoanServicingCenter's web site.

Under certain circumstances, we may also give you a forbearance without requiring you to submit a request or documentation. These circumstances include, but are not limited to, the following:

- Periods necessary for us to determine your eligibility for a loan discharge;
- A period of up to 60 days in order for us to collect and process documentation related to your request for a deferment, forbearance, change in repayment plan, or consolidation loan (we do not capitalize the interest that is charged during this period); or
- Periods when you are involved in a military mobilization, or a local or national emergency.

You are responsible for paying the interest on both Direct Subsidized Loans and Direct Unsubsidized Loans during a period of forbearance.

## 21. Discharge (having your loan forgiven).
We will discharge (forgive) your loan if:

- You die. The DirectLoanServicingCenter must receive acceptable documentation of your death, as defined in the Act.
- Your loan is discharged in bankruptcy. However, federal student loans are not automatically discharged if you file for bankruptcy. In order to have your loan discharged in bankruptcy, you must prove to the bankruptcy court that repaying the loan would cause undue hardship.
- You become totally and permanently disabled (as defined in the Act) and meet certain other requirements.

In certain cases, we may also discharge all or a portion of your loan if:

- You could not complete a program of study because the school closed;
- Your loan eligibility was falsely certified by the school;
- A loan in your name was falsely certified as a result of a crime of identity theft; or
- The school did not pay a refund of your loan money that it was required to pay under federal regulations.

We may forgive a portion of any student loans you received under the Direct Loan or FFEL program after October 1, 1998 if you teach full time for five consecutive years in certain low-income elementary and/or secondary schools and meet certain other qualifications, and if you did not owe a Direct Loan or FFEL program loan as of October 1, 1998, or as of the date you obtain a loan after October 1, 1998.

A public service loan forgiveness program is also available Under this program, the remaining balance due on your eligible Direct Loan Program loans may be cancelled after you have made 120 payments on those loans (after October 2, 2007) under certain repayment plans while you are employed in certain public service jobs.

The Act may provide for certain loan forgiveness or repayment benefits on your loans in addition to the benefits described above. If other forgiveness or repayment options become available, the DirectLoanServicingCenter will provide information about these benefits.

To request a loan discharge based on one of the conditions described above (except for discharges due to death or bankruptcy), you must complete an application that you may obtain from the DirectLoanServicingCenter.

In some cases, you may assert, as a defense against collection of your loan, that the school did something wrong or failed to do something that it should have done. You can make such a defense against repayment only if the school's act or omission directly relates to your loan or to the educational services that the loan was intended to pay for, and if what the school did or did not do would give rise to a legal cause of action against the school under applicable state law. If you believe that you have a defense against repayment of your loan, contact the DirectLoanServicingCenter.

We do not guarantee the quality of the academic programs provided by schools that participate in federal student financial aid programs. You must repay your loan even if you do not complete the education paid for with the loan, are unable to obtain employment in the field of study for which your school provided training, or are dissatisfied with, or do not receive, the education you paid for with the loan.

## 22. Loan consolidation.
A Direct Consolidation Loan Program is available that allows you to consolidate (combine) one or more of your eligible federal education loans into one loan. Consolidation allows you to extend the period of time that you have to repay your loans, and to combine several loan debts into a single monthly payment. This may make it easier for you to repay your loans. However, you will pay more interest if you extend your repayment period through consolidation, since you will be making payments for a longer period of time. Contact the DirectLoanServicingCenter for more information about loan consolidation.

## 23. Department of Defense and other federal agency loan repayment.
Under certain circumstances, military personnel may have their federal education loans repaid by the Secretary of Defense. This benefit is offered as part of a recruitment program that does not apply to individuals based on their previous military service or to those who are not eligible for enlistment in the U.S. Armed Forces. For more information, contact your local military service recruitment office.

Other agencies of the federal government may also offer student loan repayment programs as an incentive to recruit and retain employees. Contact the agency's human resources department for more information.

## 24. AmeriCorps program education awards.
Under the National and Community Service Act of 1990, you may receive an education award that can be used to repay a Direct Subsidized Loan or Direct Unsubsidized Loan if you successfully complete a term of service in an AmeriCorps program. For more information, contact an official of your program.

Revised 03/2009

## William D. Ford Federal Direct Loan Program
## Direct Unsubsidized Loan Borrower's Rights and Responsibilities Statement

### Repaying Your Loans[1]

| Initial Debt When You Enter Repayment | Standard | | Extended[2,3] | | Graduated | | Income Contingent[5,6] Income = $15,000 | | | | Income Contingent[5,6] Income = $15,000 | | | | Income Contingent[5,6] Income = $15,000 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Single | | Married/HOH[7] | | Single | | Married/HOH[7] | | Single | | Married/HOH[7] | |
| | Per Month | Total | Per Month | Total | Per Month[4] | Total | Per Month | Total | Per Month | Total | Per Month | Total | Per Month | Total | Per Month | Total | Per Month | Total |
| 3,500 | 50 | 4,471 | Not Available | | 25 | 5,157 | 21 | 6,939 | 20 | 6,673 | 27 | 6,092 | 25 | 6,405 | 36 | 5,128 | 36 | 5,128 |
| 5,000 | 58 | 6,905 | Not Available | | 40 | 7,278 | 30 | 9,912 | 29 | 9,533 | 38 | 8,703 | 36 | 9,150 | 51 | 7,326 | 51 | 7,326 |
| 5,500 | 63 | 7,595 | Not Available | | 43 | 8,007 | 33 | 10,903 | 30 | 10,463 | 42 | 9,574 | 40 | 10,065 | 56 | 8,059 | 56 | 8,059 |
| 7,500 | 86 | 10,357 | Not Available | | 59 | 10,919 | 45 | 14,868 | 30 | 14,019 | 57 | 13,055 | 54 | 13,725 | 76 | 10,989 | 76 | 10,989 |
| 10,500 | 121 | 14,500 | Not Available | | 83 | 15,283 | 64 | 20,815 | 30 | 18,877 | 80 | 18,277 | 76 | 19,215 | 107 | 15,385 | 107 | 15,385 |
| 15,000 | 173 | 20,714 | Not Available | | 119 | 21,834 | 87 | 29,685 | 30 | 25,229 | 114 | 26,110 | 108 | 27,451 | 153 | 21,978 | 153 | 21,978 |
| 18,500 | 213 | 25,548 | Not Available | | 146 | 26,929 | 87 | 35,992 | 30 | 29,465 | 140 | 32,203 | 134 | 33,856 | 188 | 27,106 | 188 | 27,106 |
| 23,000 | 265 | 31,762 | Not Available | | 182 | 33,479 | 87 | 43,141 | 30 | 34,128 | 174 | 40,036 | 166 | 42,091 | 234 | 33,699 | 234 | 33,699 |
| 30,000 | 345 | 41,429 | Not Available | | 237 | 43,668 | 87 | 52,340 | 30 | 39,756 | 228 | 52,221 | 197 | 55,743 | 407 | 43,956 | 407 | 43,956 |
| 40,000 | 460 | 55,239 | 277 | 83,289 | 316 | 58,229 | 87 | 62,005 | 30 | 44,827 | 253 | 72,717 | 197 | 84,352 | 468 | 58,608 | 468 | 58,608 |
| 46,000 | 529 | 63,524 | 319 | 95,782 | 363 | 66,956 | 87 | 66,084 | 30 | 46,378 | 253 | 89,828 | 197 | 105,472 | 509 | 67,399 | 509 | 67,399 |
| 50,000 | 575 | 69,048 | 347 | 104,111 | 395 | 72,778 | 87 | 68,153 | 30 | 46,860 | 253 | 103,268 | 197 | 111,575 | 587 | 73,260 | 587 | 73,260 |
| 60,000 | 690 | 82,858 | 391 | 140,816 | 474 | 87,334 | 87 | 71,219 | 30 | 46,934 | 253 | 136,615 | 197 | 124,085 | 587 | 88,251 | 587 | 88,251 |
| 70,000 | 806 | 96,667 | 456 | 164,285 | 535 | 101,890 | 87 | 71,721 | 30 | 46,934 | 253 | 148,551 | 197 | 133,106 | 587 | 106,551 | 587 | 106,551 |
| 80,000 | 920 | 110,477 | 522 | 187,754 | 632 | 116,445 | 87 | 71,721 | 30 | 46,934 | 253 | 157,373 | 197 | 138,907 | 587 | 128,146 | 587 | 128,146 |
| 90,000 | 1,036 | 124,287 | 587 | 211,224 | 711 | 131,002 | 87 | 71,721 | 30 | 46,934 | 253 | 163,227 | 197 | 141,925 | 587 | 152,967 | 587 | 152,967 |
| 100,000 | 1,151 | 138,096 | 652 | 234,693 | 790 | 145,556 | 87 | 71,721 | 30 | 46,934 | 253 | 166,457 | 197 | 142,386 | 587 | 181,224 | 587 | 181,224 |
| 110,000 | 1,266 | 151,906 | 717 | 258,162 | 869 | 160,111 | 87 | 71,721 | 30 | 46,934 | 253 | 167,172 | 197 | 142,386 | 587 | 213,485 | 587 | 213,485 |
| 120,000 | 1,381 | 165,716 | 782 | 281,632 | 948 | 174,668 | 87 | 71,721 | 30 | 46,934 | 253 | 167,172 | 197 | 142,386 | 587 | 250,281 | 587 | 250,281 |
| 130,000 | 1,496 | 179,525 | 848 | 305,101 | 1,024 | 189,224 | 87 | 71,721 | 30 | 46,934 | 253 | 167,172 | 197 | 142,386 | 587 | 292,313 | 587 | 292,313 |
| 138,500 | 1,594 | 191,264 | 903 | 325,050 | 1,094 | 201,596 | 87 | 71,721 | 30 | 46,934 | 253 | 167,172 | 197 | 142,386 | 587 | 332,912 | 587 | 332,912 |

[1] The estimated payments were calculated using a fixed interest rate of 6.80%.
[2] This repayment plan is available only to borrowers who have an outstanding balance on Direct Loan Program loans that exceeds $30,000, and who had no outstanding balance on a Direct Loan Program loan as of October 7, 1998 or on the date they obtained a Direct Loan Program loan on or after October 7, 1998.
[3] These amounts are fixed, rounded to the nearest dollar, and calculated based on a 25-year repayment term.
[4] This is your beginning payment, which may increase during your 10-year repayment term.
[5] Assumes a 5% annual income growth (Census Bureau).
[6] The payments were calculated using the formula requirements in effect during 2006.
[7] HOH is Head of Household; assumes a family size of two.

### TRANSACTION HISTORY

**Below is a summary of the actions that you completed during the electronic Master Promissory Note (MPN) process:**

| | |
|---|---|
| Your identity was confirmed by the PIN Web site on | 07/08/2011 10:45:26 |
| You agreed to use an electronic MPN on | 07/08/2011 10:50:00 |
| You reviewed your draft MPN and confirmed that you read, understood, and agreed to the Borrower Request, Certifications, Authorizations, and Understandings, Promise to Pay, MPN Terms and Conditions, Important Notices and Borrower's Rights and Responsibilities Statement on | 07/08/2011 11:23:43 |
| You signed your MPN on | 07/08/2011 11:24:23 |
| You reviewed your signed MPN on | 07/08/2011 11:24:34 |
| You confirmed your acceptance of the terms and conditions of this MPN and submitted it to us on | 07/08/2011 11:25:57 |

# Direct Loans
William D. Ford Federal Direct Loan Program

**Federal Direct PLUS Loan**
**Master Promissory Note**
**William D. Ford Federal Direct Loan Program**

Warning: Any person who knowingly makes a false statement or misrepresentation on this form or any accompanying document is subject to penalties that may include fines, imprisonment, or both, under the U.S. Criminal Code and 20 U.S.C. 1097.

**EXHIBIT**

**B**

OMB No. 1845-0068
Form Approved
Exp. Date 02/29/2016

## SECTION A: BORROWER INFORMATION – TO BE COMPLETED BY THE BORROWER; READ THE INSTRUCTIONS IN SECTION H BEFORE COMPLETING THIS SECTION

**CHECK ONE - I am a: [ X ] Graduate or Professional Student     [ ] Parent of a Dependent Undergraduate Student**

1. Driver's License State and No.

2. Social Security No.

3. Date of Birth (mm-dd-yyyy)

4. E-Mail Address (optional)

5. Name and Permanent Address (see instructions)

MORGAN , ASHLEY N

6. Area Code/Telephone No.

7. Citizenship Status (to be completed by parent borrowers only -- check one)

(1) [ ] U.S. Citizen or National

(2) [ ] Permanent Resident/Other Eligible Non-Citizen

If (2), Alien Registration No.

8. Employer's Name and Address     N/A

9. Work Area Code/Telephone No.

10. References: List two persons with different U.S. addresses who do not live with you and who have known you for at least three years. If you are a parent borrower, do not list the student.

| | 1. | 2. |
|---|---|---|
| Name | | |
| Permanent Street Address | | |
| City, State, Zip Code | | |
| E-Mail Address (optional) | | |
| Area Code/Telephone No. | | |
| Borrower | | |

## SECTION B: SCHOOL INFORMATION – TO BE COMPLETED BY THE SCHOOL

11. School Name and Address
BAYLOR UNIVERSITY
ONE BEAR PLACE #97048
WACO , TX  767987048

12. School Code/Branch
G03545

13. Identification No.
508252556N15G03545999

## SECTION C: DEPENDENT UNDERGRADUATE STUDENT INFORMATION – TO BE COMPLETED ONLY IF YOU ARE A PARENT BORROWER

14. Dependent Undergraduate Student's Name (last, first, middle initial)

15. Social Security No.

16. Date of Birth (mm-dd-yyyy)

## SECTION D: BORROWER REQUEST, CERTIFICATIONS, AUTHORIZATIONS, AND UNDERSTANDINGS – READ CAREFULLY BEFORE SIGNING BELOW

17. This is a Master Promissory Note (MPN) for one or more Federal Direct PLUS (Direct PLUS) Loans. I request a Direct PLUS Loan under this MPN in an amount not to exceed my or (if I am a parent borrower) the student's annual cost of attendance, minus other financial aid received for each academic year. For each loan, the school will notify me of the amount that I am eligible to borrow. Within certain timeframes, I may cancel a loan or request a lower amount by contacting the school, or by refusing to accept or returning all or a portion of a loan disbursement that is made to me. The Borrower's Rights and Responsibilities Statement that accompanies this MPN and the disclosure statements that will be provided to me contain additional information about my right to cancel a loan or request a lower amount. If I have an adverse credit history and obtain an endorser so that I may receive a Direct PLUS Loan, only one loan may be made to me under this MPN.

18. Under penalty of perjury, I certify that:
    A. The information I have provided on this MPN and as updated by me from time to time is true, complete, and correct to the best of my knowledge and belief and is made in good faith.
    B. I am **(1)** a graduate or professional student, **(2)** the biological or adoptive parent of the student identified in Section C, or **(3)** the spouse of the student's parent and I am considered to be a parent in accordance with the instructions on the Free Application for Federal Student Aid (FAFSA) for purposes of reporting my income and assets on the FAFSA.
    C. I will use the proceeds of loans made under this MPN for authorized educational expenses that I incur or, if I am a parent borrower, that the student incurs; I will immediately repay any loan proceeds that cannot be attributed to educational expenses for attendance on at least a half-time basis at the school that certified my loan eligibility.
    D. If I owe an overpayment on a Federal Perkins Loan, Federal Pell Grant, Federal Supplemental Educational Opportunity Grant, Academic Competitiveness Grant (ACG), National Science or Mathematics Access to Retain Talent (SMART) Grant, or Leveraging Educational Assistance Partnership Grant, I have made satisfactory arrangements to repay the amount owed.
    E. If I am in default on any loan I received under the Federal Perkins Loan Program (including National Direct Student Loans), the William D. Ford Federal Direct Loan (Direct Loan) Program, or the Federal Family Education Loan (FFEL) Program, I have made satisfactory repayment arrangements to repay the amount owed.
    F. If I have been convicted of, or if I have pled *nolo contendere* (no contest) or guilty to, a crime involving fraud in obtaining funds under Title IV of the Higher Education Act of 1965, as amended (HEA), I have fully repaid the funds to the U.S. Department of Education (ED) or to the loan holder in the case of a Title IV federal student loan. If I am a parent applying for a Direct PLUS Loan for a dependent undergraduate student, and if that student has been convicted of, or has pled *nolo contendere* or guilty to, a crime involving fraud in obtaining funds under Title IV of the HEA, the student has fully repaid the funds to ED, or to the loan holder in the case of a Title IV federal student loan.

19. For each Direct PLUS Loan I receive under this MPN:
    A. I authorize the school to certify my eligibility for the loan.
    B. I authorize the school to credit my loan proceeds to my account at the school (if I am a graduate or professional student borrower) or to the student's account at the school (if I am a parent borrower), and to pay to ED any refund that may be due up to the full amount of the loan.
    C. I authorize ED to investigate my credit record and report information about my loan status to persons and organizations permitted by law to receive that information.
    D. I authorize ED to defer repayment of principal on my loan if I enroll at least half-time at an eligible school and, if I am a graduate or professional student, for the 6-month period after I cease to be enrolled at least half-time, unless I notify ED differently.
    E. I authorize the schools, ED, and their agents and contractors to release information about my loan to the references on the loan and to my immediate family members, unless I submit written directions otherwise.
    F. I authorize the schools, ED, and their agents and contractors to share information about my loan with each other.
    G. I authorize the schools, ED, and their agents and contractors to contact me regarding my loan request or my loan, including repayment of my loan, at the number that I provide on this MPN or any future number that I provide for my cellular telephone or other wireless device using automated dialing equipment or artificial or prerecorded voice or text messages.

20. I understand that:
    A. ED will give me the opportunity to pay the interest that accrues on each loan made under this MPN during deferment (including in-school deferment), forbearance, and other periods as provided under the Act. If I do not pay the interest that accrues during these periods, ED may add unpaid interest that accrues on each loan made under this MPN to the principal balance of that loan (this is called "capitalization") at the end of the deferment, forbearance, or other period. Capitalization will increase the principal balance on my loan and the total amount of interest I must pay.
    B. ED has the authority to verify information reported on this MPN with other federal agencies.

## SECTION E: PROMISE TO PAY – TO BE COMPLETED BY THE BORROWER

21. I promise to pay to ED all loan amounts disbursed under the terms of this MPN, plus interest and other charges and fees that may become due as provided in this MPN. **I understand that more than one loan may be made to me under this MPN for myself or for the student identified in Section C.** I understand that by accepting any disbursement issued at any time under this MPN, I agree to repay the loan associated with that disbursement.

22. If I do not make a payment on a loan made under this MPN when it is due, I will also pay reasonable collection costs, including but not limited to attorney fees, court costs, and other fees.

23. I will not sign this MPN before reading the entire MPN, even if I am told not to read it, or told that I am not required to read it. I am entitled to an exact copy of this MPN and the Borrower's Rights and Responsibilities Statement.

24. My signature certifies that I have read, understand, and agree to the terms and conditions of this MPN, including the Borrower Request, Certifications, Authorizations, and Understandings in Section D, the MPN Terms and Conditions described in Section F, the Notice About Subsequent Loans Made Under this MPN in Section F, and the Borrower's Rights and Responsibilities Statement.

**I UNDERSTAND THAT I MAY RECEIVE ONE OR MORE LOANS UNDER THIS MPN, AND THAT I MUST REPAY ALL LOANS THAT I RECEIVE UNDER THIS MPN.**

25. **Borrower's Signature**   Ashley N Morgan

26. **Today's Date (mm-dd-yyyy)**   10/25/2014

*Page 1 of 11*

# Direct PLUS Loan MPN (continued)

## SECTION F: MPN TERMS AND CONDITIONS

### GOVERNING LAW

The terms of this Master Promissory Note (MPN) will be interpreted in accordance with the Higher Education Act of 1965, as amended (the HEA) (20 U.S.C. 1070 *et seq.*), the U.S. Department of Education's (ED's) regulations, any amendments to the HEA and the regulations in accordance with the effective date of those amendments, and other applicable federal laws and regulations (collectively referred to as the "Act").

Under applicable state law, except as preempted by federal law, you may have certain borrower rights, remedies, and defenses in addition to those stated in this MPN and the Borrower's Rights and Responsibilities Statement.

### DISCLOSURE OF LOAN TERMS

This MPN applies to Federal Direct PLUS Loans (Direct PLUS Loans). Under this MPN, the principal amount that you owe, and are required to repay, will be the sum of all disbursements that are made (unless you reduce or cancel any disbursements as explained below under Loan Cancellation), plus any unpaid interest that is capitalized and added to the principal balance.

Each loan made under this MPN is separately enforceable based on a true and exact copy of this MPN.

At or before the time of the first disbursement of each loan, you will receive a disclosure statement identifying the amount of the loan and additional terms of the loan. The Borrower's Rights and Responsibilities Statement accompanying this MPN contains important additional information. The Borrower's Rights and Responsibilities Statement and any disclosure statement you receive in connection with any loan under this MPN are hereby incorporated into this MPN.

You may request additional loan funds to pay for your or the student's educational costs by contacting the school's financial aid office. The school will determine if you are eligible for an additional loan funds. You will be notified of any increase or other change in the amount of your loan.

ED may use a servicer to handle billing and other communications related to your loan.

### LOAN CANCELLATION

You may pay back all or part of a loan disbursement within the timeframes set by the Act, as explained in the Borrower's Rights and Responsibilities Statement and in a disclosure statement that you will receive. If you return the full loan amount within those timeframes, you will not have to pay any loan fee or interest charges. If you return part of a disbursement within those timeframes, ED will reduce the loan fee and interest charges in proportion to the amount returned.

### INTEREST

Unless ED notifies you in writing that a different rate will apply, the interest rate for any loan you receive under this MPN is a fixed rate that is calculated in accordance with a formula specified in the Act. The interest rate for Direct PLUS Loans is calculated each year. When the rate is calculated, it applies to Direct PLUS Loans for which the first disbursement is made during the period beginning on July 1 of one year and ending on June 30 of the following year. Different interest rates may apply to different loans you receive under this MPN, depending on when the loan is first disbursed. The maximum interest rate for Direct PLUS Loans is 10.5%. ED will notify you of the interest rate on each of your loans.

Interest accrues on the unpaid principal balance of each loan from the date of disbursement until the loan is paid in full, including during deferment, forbearance, or other periods. You agree to pay all interest charges on your loan. You will be given the opportunity to pay the interest that accrues during a period of authorized deferment or forbearance. If you do not pay this interest, ED may capitalize the interest (add it to the principal balance of your loans) at the end of the deferment or forbearance.

### LOAN FEE

As provided by the Act, ED charges a loan fee for each Direct PLUS Loan you receive under this MPN. The loan fee is a percentage of the loan amount and will be deducted proportionately from each disbursement of each of your loans. The specific loan fee that you are charged will be shown on disclosure statements that will be sent to you. ED may refund the loan fee only as permitted by the Act.

### LATE CHARGES AND COLLECTION COSTS

ED may collect from you:

- A late charge of not more than six cents for each dollar of each late payment if you do not make any part of a required installment payment within 30 days after it becomes due, and
- Any other charges and fees that are permitted by the Act related to the collection of your loans.

If you default on your loans, you must pay reasonable collection costs, plus court costs and attorney fees.

### REPAYMENT

You must repay the full amount of the loans made under this MPN, plus accrued interest. You will repay each loan in monthly installments during a repayment period that begins on the day of the final disbursement of that loan. Generally, payments that you make or that someone else makes on your behalf will be applied first to late charges and collection costs that are due, then to interest that has not been paid, and finally to the principal amount of the loan. However, any payments made under the Income-Based Repayment Plan or the Pay As You Earn Plan will be applied first to interest that is due, then to fees that are due, and then to the principal amount.

ED will provide you with a choice of repayment plans. The Borrower's Rights and Responsibilities Statement includes Information on these repayment plans.

ED will provide you with a repayment schedule that identifies your payment amounts and due dates. If you intend to repay your loan but are unable to make your scheduled loan payments, ED may grant you a forbearance that allows you to temporarily stop making payments or to temporarily make a smaller payment amount, which extends the time for making payments.

ED may adjust payment dates on your loans or may grant you a forbearance to eliminate a delinquency that remains even though you are making scheduled installment payments.

You may prepay all or any part of the unpaid balance on your loans at any time without penalty. If you do not specify which loans you are prepaying, ED will determine how to apply the prepayment in accordance with the Act.

After you have repaid in full a loan made under this MPN, ED will send you a notice telling you that you have paid off your loan.

### ACCELERATION AND DEFAULT

At ED's option, the entire unpaid balance of a loan made under this MPN will become immediately due and payable (this is called "acceleration") if any one of the following events occurs:

**(1)** You (or the student) do not enroll as at least a half-time student at the school that certified your loan eligibility;

**(2)** You do not use the proceeds of the loan solely for your or the student's educational expenses;

**(3)** You make a false representation that results in your receiving a loan for which you are not eligible; or

**(4)** You default on the loan.

The following events will constitute a default on your loan:

**(1)** You do not pay the entire unpaid balance of the loan after ED has exercised its option under items (1), (2), and (3) above;

**(2)** You do not make installment payments when due, and your failure to make payments has persisted for at least 270 days; or

**(3)** You do not comply with other terms of the loan, and ED reasonably concludes that you no longer intend to honor your repayment obligation.

If you default, ED may capitalize all outstanding interest. This will increase the principal balance of your loan, and the full amount of the loan, including the new principal balance and collection costs, will become immediately due and payable.

If you default, the default will be reported to nationwide consumer reporting agencies (credit bureaus) and will significantly and adversely affect your credit history. A default will have additional adverse consequences as explained in the Borrower's Rights and Responsibilities Statement. Following default, you may be required to repay the loan (potentially including amounts in excess of the principal and interest) under the Income-Based Repayment Plan or the Income-Contingent Repayment Plan in accordance with the Act.

### LEGAL NOTICES

Any notice required to be given to you will be effective if it is sent by first class mail to the most recent address ED has for you, by electronic means to an address you have provided, or by any other method of notification that is permitted or required by applicable statute or regulation. You must immediately notify ED of a change of contact information or status as specified in the Borrower's Rights and Responsibilities Statement under "Information you must report to us after you receive your loan."

If ED does not enforce or insist on compliance with any term of this MPN, this does not waive any right of ED. No provision of this MPN may be modified or waived except in writing by ED. If any provision of this MPN is determined to be unenforceable, the remaining provisions will remain in force.

Information about your loans will be submitted to the National Student Loan Data System (NSLDS). Information in NSLDS is accessible to schools, lenders, and guarantors for specific purposes as authorized by ED.

### NOTICE ABOUT SUBSEQUENT LOANS MADE UNDER THIS MPN

This MPN authorizes ED to make multiple loans to you to pay your educational expenses or, if you are a parent borrower, the educational expenses of the student identified in Section C during the multi-year term of this MPN, upon your request and upon the school's annual certification of your loan eligibility. If you have an adverse credit history and obtain an endorser to receive a Direct PLUS Loan, only one loan may be made under this MPN.

At schools that are authorized to use the multi-year feature of the MPN and choose to do so, subsequent loans may be made under this MPN for subsequent academic years. At any school, subsequent loans may be made under this MPN for the same academic year.

No subsequent loans will be made under this MPN after the earliest of the following dates:

**(1)** The date ED or the school receives your written notice that no further loans may be made;

**(2)** One year after the date you sign the MPN or the date ED receives the MPN if no disbursements are made under the MPN; or

**(3)** Ten years after the date you sign the MPN or the date ED receives the MPN.

**Direct PLUS Loan MPN** (*continued*)

**SECTION G: IMPORTANT NOTICES**

**GRAMM-LEACH-BLILEY ACT NOTICE**

In 1999, Congress enacted the Gramm-Leach-Bliley Act (Public Law 106-102). This Act requires that lenders provide certain information to their customers regarding the collection and use of nonpublic personal information.

We disclose nonpublic personal information to third parties only as necessary to process and service your loan and as permitted by the Privacy Act of 1974. See the Privacy Act Notice below. We do not sell or otherwise make available any information about you to any third parties for marketing purposes.

We protect the security and confidentiality of nonpublic personal information by implementing the following policies and practices. All physical access to the sites where nonpublic personal information is maintained is controlled and monitored by security personnel. Our computer systems offer a high degree of resistance to tampering and circumvention. These systems limit data access to our staff and contract staff on a "need-to-know" basis, and control individual users' ability to access and alter records within the systems. All users of these systems are given a unique user ID with personal identifiers. All interactions by individual users with the systems are recorded.

**PRIVACY ACT NOTICE**

**The Privacy Act of 1974 (5 U.S.C. 552a) requires that the following notice be provided to you:**

The authority for collecting the requested information from and about you is §451 *et seq.* of the Higher Education Act (HEA) of 1965, as amended (20 U.S.C. 1087a *et seq.*) and the authorities for collecting and using your Social Security Number (SSN) are §§428B(f) and 484(a)(4) of the HEA (20 U.S.C. 1078-2(f) and 1091(a)(4)) and 31 U.S.C. 7701(b). Participating in the William D. Ford Federal Direct Loan (Direct Loan) Program and giving us your SSN are voluntary, but you must provide the requested information, including your SSN, to participate.

The principal purposes for collecting the information on this form, including your SSN, are to verify your identity, to determine your eligibility to receive a loan or a benefit on a loan (such as a deferment, forbearance, discharge, or forgiveness) under the Direct Loan Program, to permit the servicing of your loan(s), and, if it becomes necessary, to locate you and to collect and report on your loan(s) if your loan(s) become delinquent or in default. We also use your SSN as an account identifier and to permit you to access your account information electronically.

The information in your file may be disclosed, on a case by case basis or under a computer matching program, to third parties as authorized under routine uses in the appropriate systems of records notices. The routine uses of this information include, but are not limited to, its disclosure to federal, state, or local agencies, to private parties such as relatives, present and former employers, business and personal associates, to consumer reporting agencies, to financial and educational institutions, and to guaranty agencies in order to verify your identity, to determine your eligibility to receive a loan or a benefit on a loan, to permit the servicing or collection of your loan(s), to enforce the terms of the loan(s), to investigate possible fraud and to verify compliance with federal student financial aid program regulations, or to locate you if you become delinquent in your loan payments or if you default. To provide default rate calculations, disclosures may be made to guaranty agencies, to financial and educational institutions, or to state agencies. To provide financial aid history information, disclosures may be made to educational institutions. To assist program administrators with tracking refunds and cancellations, disclosures may be made to guaranty agencies, to financial and educational institutions, or to federal or state agencies. To provide a standardized method for educational institutions to

efficiently submit student enrollment status, disclosures may be made to guaranty agencies or to financial and educational institutions. To counsel you in repayment efforts, disclosures may be made to guaranty agencies, to financial and educational institutions, or to federal, state, or local agencies.

In the event of litigation, we may send records to the Department of Justice, a court, adjudicative body, counsel, party, or witness if the disclosure is relevant and necessary to the litigation. If this information, either alone or with other information, indicates a potential violation of law, we may send it to the appropriate authority for action. We may send information to members of Congress if you ask them to help you with federal student aid questions. In circumstances involving employment complaints, grievances, or disciplinary actions, we may disclose relevant records to adjudicate or investigate the issues. If provided for by a collective bargaining agreement, we may disclose records to a labor organization recognized under 5 U.S.C. Chapter 71. Disclosures may be made to our contractors for the purpose of performing any programmatic function that requires disclosure of records. Before making any such disclosure, we will require the contractor to maintain Privacy Act safeguards. Disclosures may also be made to qualified researchers under Privacy Act safeguards.

**FINANCIAL PRIVACY ACT NOTICE**

Under the Right to Financial Privacy Act of 1978 (12 U.S.C. 3401-3421), ED will have access to financial records in your student loan file maintained in compliance with the administration of the Direct Loan Program.

**PAPERWORK REDUCTION NOTICE**

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless such collection displays a valid OMB control number. The valid OMB control number for this information collection is 1845-0068. Public reporting burden for this collection of information is estimated to average 30 minutes (0.5 hours) per response, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. The obligation to respond to this collection is required to obtain a benefit in accordance with 34 CFR 685.201. If you have comments or concerns regarding the status of your individual submission of this form, write to:

U.S. Department of Education
Common Origination and Disbursement School Relations Center
Attn: Applicant Services
PO Box 9002
Niagara Falls, NY 14302

## Direct PLUS Loan MPN (*continued*)

**SECTION H: INSTRUCTIONS FOR COMPLETING THE MPN**

*ED will perform a credit check with a nationwide consumer reporting agency before approving each loan. If you have an adverse credit history, you cannot borrow a Direct PLUS Loan unless you:*

*(1) Obtain an endorser who does not have an adverse credit history, or*

*(2) Document to ED's satisfaction that there are extenuating circumstances related to the adverse credit history.*

*An endorser is someone who agrees to repay the loan if you do not do so. If you are a parent borrower, the endorser may not be the student for whom you are borrowing the loan.*

*Type or print using blue or black ink. Do not use pencil. Enter all dates as month-day-year (mm-dd-yyyy). Use only numbers. Example: January 31, 2014 = 01/31/2014.*

*Some of the items in Sections A and C may have been completed for you. If so, review these items carefully to make sure that the information is correct.*

*Cross out any information that is incorrect and enter the correct information. Put your initials next to any information that you change.*

**SECTION A: BORROWER INFORMATION**

*IMPORTANT: Check the appropriate box to indicate whether you are a Graduate or Professional Student or a Parent of a Dependent Undergraduate Student **before** completing the Borrower Information section.*

**Item 1.** Enter the two-letter abbreviation for the state that issued your current driver's license, followed by your driver's license number. If you do not have a driver's license, enter N/A.

**Item 2.** Enter your nine-digit Social Security Number.

**Item 3.** Enter your date of birth.

**Item 4.** Enter your preferred e-mail address for receiving communications. You are not required to provide this information. If you do, we may use your e-mail address to communicate with you. If you do not have an e-mail address or do not wish to provide one, enter N/A.

**Item 5.** Enter your last name, then your first name and middle initial. Enter your permanent address (number, street, apartment number, or rural route number and box number, then city, state, zip code). If your mailing address is a post office box or general delivery, you must list **both** your street address and your mailing address. If you do not have a permanent street address or rural route number and box number, provide the physical location of your residence. A temporary school address is not acceptable.

**Item 6.** Enter the area code and telephone number at which you can most easily be reached. (Do not list your work telephone number here.) If you do not have a telephone, enter N/A.

**Item 7.** *Complete this item only if you are a parent borrower.* Place a check in the box that corresponds to your citizenship status. If you check box (2), enter your Alien Registration Number.

**(1)** "U.S. Citizen" includes citizens of the 50 states, the District of Columbia, Puerto Rico, the U.S. Virgin Islands, Guam, and the Northern Mariana Islands. "National" includes not only all U.S. citizens, but also citizens of American Samoa and Swain's Island.

**(2)** "Permanent Resident" means someone who can provide documentation of this status from the U.S. Citizenship and Immigration Services (USCIS). "Other Eligible Non-Citizen" includes individuals who can provide documentation from the USCIS that they are in the United States for a purpose that is not temporary, with the intention of becoming a citizen or permanent resident. This category includes refugees, persons granted asylum, Cuban-Haitian entrants, temporary residents under the Immigration Reform and Control Act of 1986, and others.

**NOTE: If your citizenship status is not one of the categories described above, you are not eligible to receive a Direct PLUS Loan.**

**Item 8.** Enter your employer's name and address (street, city, state, zip code). If you are self-employed, enter the name and address of your business. If you are not employed, enter N/A.

**Item 9.** Enter your work area code and telephone number. If you are self-employed, enter the area code and telephone number of your business.

**Item 10.** Enter the requested information for two adults with different U.S. addresses who do not live with you and who have known you for at least three years. If you are a parent borrower, do not list the student for whom you are borrowing as a reference. References who live outside the United States are not acceptable. If a reference does not have a telephone number or e-mail address, or does not wish to provide an e-mail address, enter N/A. If you provide an e-mail address for a reference, ED may use it to communicate with the reference.

**SECTION B: SCHOOL INFORMATION**

This section will be completed by the school that certifies your loan eligibility.

**SECTION C: DEPENDENT UNDERGRADUATE STUDENT INFORMATION**

*Complete this section only if you are a parent borrowing for a dependent undergraduate student.*

**Item 14.** Enter the student's last name, then first name and middle initial.

**Item 15.** Enter the student's nine-digit Social Security Number.

**Item 16.** Enter the student's date of birth.

**SECTION D: BORROWER REQUEST, CERTIFICATIONS, AUTHORIZATIONS, AND UNDERSTANDINGS**

**Items 17, 18, 19, and 20.** Read these items carefully.

**SECTION E: PROMISE TO PAY**

**Items 21, 22, 23, and 24.** Read these items carefully.

**Items 25 and 26.** Sign your full legal name, in blue or black ink, and enter the date you signed this MPN.

By signing this MPN, you:

**(1)** Acknowledge that you have read, understand, and agree to the terms and conditions of the MPN, including the Borrower Request, Certifications, Authorizations, and Understandings in Section D and the accompanying Borrower's Rights and Responsibilities Statement.

**(2)** Agree to repay in full all loans made under this MPN according to the terms and conditions of the MPN.

# William D. Ford Federal Direct Loan Program
## Direct PLUS Loan Borrower's Rights and Responsibilities Statement

***Important Notice:*** *This Borrower's Rights and Responsibilities Statement provides additional information about the terms and conditions of the loans you receive under the accompanying Federal Direct PLUS Loan (Direct PLUS Loan) Master Promissory Note (MPN).* ***Please keep this Borrower's Rights and Responsibilities Statement for your records.*** *You may request another copy of this Borrower's Rights and Responsibilities Statement at any time by contacting your servicer.*

Throughout this Borrower's Rights and Responsibilities Statement, the words "we," "us," and "our" refer to the U.S. Department of Education. The word "loan" refers to one or more loans made under the Direct PLUS MPN.

*Note to Endorser: An endorser is someone who agrees to repay a Direct PLUS Loan if the borrower does not repay the loan. If you are the endorser of a Direct PLUS Loan, you are not entitled to all of the same benefits as a Direct PLUS Loan borrower, and not all of the terms and conditions of a Direct PLUS Loan apply to you. However, you should read the entire Borrower's Rights and Responsibilities Statement. We have highlighted important information that applies to you as an endorser.*

**1. The William D. Ford Federal Direct Loan Program.** The William D. Ford Federal Direct Loan (Direct Loan) Program includes the following types of loans, known collectively as "Direct Loans":

- Federal Direct Stafford/Ford Loans (Direct Subsidized Loans)
- Federal Direct Unsubsidized Stafford/Ford Loans (Direct Unsubsidized Loans)
- Federal Direct PLUS Loans (Direct PLUS Loans)
- Federal Direct Consolidation Loans (Direct Consolidation Loans)

The Direct Loan Program is authorized by Title IV, Part D, of the Higher Education Act of 1965, as amended, 20 U.S.C. 1070 *et seq* (HEA).

Direct Loans are made by the U.S. Department of Education. We contract with servicers to service, answer questions about, and process payments on Direct Loans. We will provide you with the address and telephone number of your servicer after the school notifies us that the first disbursement of your loan has been made.

**2. Laws that apply to this MPN.** The terms and conditions of loans made under this MPN are determined by the HEA and other applicable federal laws and regulations. These laws and regulations are referred to as "the Act" throughout this Borrower's Rights and Responsibilities Statement. Under applicable state law, excepted as preempted by federal law, you may have certain borrower rights, remedies, and defenses in addition to those stated in the MPN and this Borrower's Rights and Responsibilities Statement.

**NOTE:** Any amendment to the Act that affects the terms of this MPN will be applied to your loans in accordance with the effective date of the amendment.

**3. Direct PLUS Loans.** Direct PLUS Loans are loans made to graduate or professional students or to parents of dependent undergraduate students to help pay for the cost of education beyond high school. ("Dependent" is defined in the Act and is different from the definition used by the Internal Revenue Service.) To be eligible for a Direct PLUS Loan:

- You must be a graduate or professional student or the biological or adoptive parent of the dependent undergraduate student for whom you are borrowing. If you are the spouse of the dependent undergraduate student's parent (that is, if you are the student's stepparent), you may borrow a Direct PLUS Loan if you are considered to be a parent in accordance with the instructions on the Free Application for Federal Student Aid (FAFSA) for purposes of reporting your income and assets on the FAFSA.

- You, and if you are a parent borrower your child, must be a U.S. citizen or national, a permanent resident of the United States, or an otherwise eligible non-citizen.

- You, and if you are a parent borrower your child, must not be in default on a federal education loan or owe an overpayment on a federal education grant, and must not have been convicted of, or have pled *nolo contendere* (no contest) or guilty to, a crime involving fraud in obtaining funds under the Act.

- You must not have an adverse credit history (unless you meet certain other requirements – see below).

- You, or if you are a parent borrower your child, must be enrolled at least half-time at a school that participates in the Direct PLUS Loan Program.

We will check your credit history each time you request a Direct PLUS Loan. If you have an adverse credit history, you may not borrow a Direct PLUS Loan unless you:

**(1)** Document to our satisfaction that there are extenuating circumstances related to the adverse credit history, or

**(2)** Obtain an endorser who does not have an adverse credit history.

An endorser is someone who agrees to repay the Direct PLUS Loan if you do not do so. If you are a parent borrower, the presence of a Direct PLUS Loan may not be the student for whom you are borrowing the loan.

If you are a graduate or professional student, you must complete a Free Application for Federal Student Aid (FAFSA) and your school must determine your eligibility for the maximum annual Direct Subsidized Loan and Direct Unsubsidized Loan amounts before you apply for a Direct PLUS Loan.

If you have questions about your eligibility for a Direct PLUS Loan, contact the financial aid office at the school you attend or are planning to attend or, if you are a parent borrower, the school the student attends or is planning to attend.

**4. About the MPN.** You may receive more than one loan under this MPN over a period of up to 10 years to pay for your educational costs (if you are a graduate or professional student borrower) or for the educational costs of the student identified in Section C of the MPN (if you are a parent borrower), as long as the school is authorized to use the multi-year feature of the MPN and chooses to do so.

If the school is not authorized to use the multi-year feature of the MPN or chooses not to do so, or if you do not want to receive more than one loan under this MPN, you must sign a new MPN for each loan that you receive.  If you do not want to receive more than one loan under this MPN, you must notify the school or your servicer in writing.

If you are a parent requesting more than one Direct PLUS Loan to pay for the educational costs of more than one dependent undergraduate student, you must sign a separate MPN for each student. You must also sign separate MPNs if you are a parent borrowing on behalf of a dependent undergraduate student and you also wish to obtain a Direct PLUS Loan to pay for your own attendance in a graduate or professional degree program.

If we determine that you have an adverse credit history and you obtain an endorser (see Item 3, "Direct PLUS Loans"), you may receive only one loan under this MPN. If you later want to receive another Direct PLUS Loan, you must sign a new MPN. If you receive a loan under this MPN without an endorser, but are later determined to have an adverse credit history and obtain an endorser for a future Direct PLUS Loan, you will have to sign a new MPN for that loan.

**5. Direct PLUS Loans and eligibility for other financial aid.** If you borrow a Direct PLUS Loan, this may affect your eligibility for other financial aid. Therefore, we suggest that you contact the school's financial aid office to determine eligibility for grants, work-study funds, or other forms of federal, state and private student aid that do not have to be repaid before you apply for a Direct PLUS Loan.

**6. Use of your loan money.** You may use the loan money you receive only to pay for your authorized educational expenses or, if you are a parent borrower, for the student's authorized educational expenses for attendance at the school that determined you were eligible to receive the loan. Authorized expenses include the following:

- Tuition
- Room
- Board
- Institutional fees
- Books
- Supplies
- Equipment
- Dependent child care expenses
- Transportation
- Commuting expenses
- Rental or purchase of a personal computer
- Loan fees
- Other documented, authorized costs

**7. Information you must report to us after you receive your loan.** You must notify your servicer and/or the financial aid office at the school about certain changes.

Until you or (if you are a parent borrower) the student graduate or otherwise leave school, you must notify the school's financial aid office if:

- You change your address or telephone number;
- You change your name (for example, maiden name to married name);
- You or (if you are a parent borrower) the student --
  - Do not enroll at least half-time for the loan period certified by the school, or
  - Do not enroll at the school that determined you were eligible to receive the loan;
- You or (if you are a parent borrower) the student stop attending school or drop below half-time enrollment;
- You or (if you are a parent borrower) the student transfer from one school to another school; or
- You or (if you are a parent borrower) the student graduate.

You must also notify your servicer if any of the above events occur at any time after you receive your loan. In addition, you must notify your servicer if you:

- Change your employer, or your employer's address or telephone number changes; or
- Have any other change in status that would affect your loan (for example, if you receive a deferment while you are unemployed, but you find a job and therefore no longer meet the eligibility requirements for the deferment).

*Note to Endorser: You must notify your servicer if you change your address, telephone number, name, or employer, or if your employer's address or telephone number changes.*

**8. Amount you may borrow.** For each academic year, you may borrow up to – but not more than – the amount of your estimated cost of attendance (if you are a graduate or professional student borrower) or the student's estimated cost of attendance (if you are a parent borrower), minus the amount of any other financial aid received for that academic year. The school determines the cost of attendance using federal guidelines. It is important not to borrow more than you can afford to repay, even if you are eligible to borrow more.

**9. Interest rate.** The interest rate on a Direct PLUS Loan is a fixed rate that is calculated in accordance with a formula specified in the Act. The interest rate is

**William D. Ford Federal Direct Loan Program**
**Direct PLUS Loan Borrower's Rights and Responsibilities Statement**

calculated each year. When the rate is calculated, it applies to all Direct PLUS Loans for which the first disbursement is made during the period beginning on July 1 of one year and ending on June 30 of the following year. Different interest rates may apply to separate loans made under this MPN depending on when the loan is first disbursed. The maximum interest rate for Direct PLUS Loans is 10.5%. We will notify you of the interest rate for each loan you receive in a disclosure statement that we send to you.

If you qualify under the Servicemembers Civil Relief Act, the interest rate on your loans obtained prior to military service may be limited to 6% during your military service. Contact your servicer for information about how to request this benefit.

> *Note to Endorser:* You are eligible for the reduced interest rate described above based on the borrower's military service or your own military service, but only for a Direct PLUS Loan for which you signed an Endorser Addendum prior to the earlier of the beginning date of the borrower's military service or the beginning date of your military service.

**10. Payment of interest.** Except as provided below for borrowers who serve in the military, you are required to pay the interest that accrues on each Direct PLUS Loan you receive from the date the loan is first disbursed until it is repaid in full, including during periods of deferment or forbearance.

*No accrual of interest benefit for active duty service members*

Under the no accrual of interest benefit for active duty service members, you are not required to pay the interest that accrues on any type of Direct Loan Program loan first disbursed on or after October 1, 2008 during periods of qualifying active duty military service (for up to 60 months).

*Interest capitalization*

If you do not pay the interest as it accrues on a Direct PLUS Loan, as described above, we will add the accrued interest to the unpaid principal balance of your loan. This is called "capitalization." Capitalization increases the unpaid principal balance of your loan, and interest then accrues on the increased principal balance. We capitalize unpaid interest when you resume repayment after periods of deferment or forbearance. We may also capitalize unpaid interest that has accrued since the first disbursement of your loan when you enter repayment for the first time.

The chart that follows shows the difference in the total amount you would repay on a $15,000 Direct PLUS Loan if you pay the interest as it is charged during a 12-month deferment or forbearance period, compared to the amount you would repay if you do not pay the interest and it is capitalized.

|  | If you pay the interest as it accrues… | If you do not pay the interest and it is capitalized… |
| --- | --- | --- |
| Loan Amount | $15,000 | $15,000 |
| Interest for 12 Months | $1,575 (paid as accrued) | $1,575 (unpaid and capitalized) |
| Principal to be Repaid | $15,000 | $16,575 |
| Monthly Payment | $202 | $224 |
| Number of Payments | 120 | 120 |
| Total Repaid | $25,863 | $26,839 |

The example in the chart above shows payments made under the Standard Repayment Plan at an interest rate of 10.5%, the maximum interest rate for a Direct PLUS Loan. In this example, you would pay $22 less per month and $975 less altogether if you pay the interest as it is charged during a 12-month deferment or forbearance period.

You may be able to claim a federal income tax deduction for interest payments you make on Direct Loans. For further information, refer to IRS Publication 970, which is available at http://www.irs.ustreas.gov.

**11. Loan fee.** For each Direct PLUS Loan you receive under this MPN, we charge a loan fee that is a percentage of the principal amount of each loan. This fee will be subtracted proportionately from each disbursement of your loan. The loan fee will be shown on a disclosure statement that we send to you.

**12. Repayment incentive programs.** A repayment incentive is a benefit that we offer to encourage you to repay your loan on time. The repayment incentive program described below may be available to you.

*Interest Rate Reduction for Automatic Withdrawal of Payments*

Under the automatic withdrawal option, your bank automatically deducts your monthly loan payment from your checking or savings account and sends it to us. Automatic withdrawal helps to ensure that your payments are made on time. In addition, you receive a 0.25% interest rate reduction while you repay under the automatic withdrawal option. Your servicer will provide you with information about the automatic withdrawal option. You can also get the information on your servicer's web site, or by calling your servicer. Your servicer's web site address and toll-free telephone number are provided on all correspondence that your servicer sends you.

**13. Disbursement (how your loan money will be paid out).** Generally, the school will disburse (pay out) your loan money in more than one installment, usually at the beginning of each academic term (for example, at the beginning of each semester or quarter). If the school does not use academic terms or does not have academic terms that meet certain requirements, it will generally disburse your loan in at least two installments, one at the beginning of the period of study for which you are receiving the loan, and one at the midpoint of that period of study. The school determines the schedule for disbursing your loan money in accordance with the Act.

The school may disburse some or all of your loan money by crediting it to your account at the school (if you are a graduate or professional student borrower) or to the student's account at the school (if you are a parent borrower), or may give it to you directly by check or other means. Your servicer will notify you in writing each time the school disburses part of your loan money.

If you are a graduate or professional student and have not previously received a Direct PLUS Loan or a Federal PLUS Loan under the Federal Family Education Loan (FFEL) Program, you must receive entrance counseling before your school can make the first disbursement of your loan. Your school will tell you if entrance counseling is required, and will provide instructions for completing entrance counseling.

If the school credits your loan money to your or the student's account and the amount credited is more than the amount of the tuition and fees, room and board, and other authorized charges, the excess amount is called a credit balance.

Unless you authorize the school to hold the credit balance for you, the school must pay you the credit balance within the following timeframes:

- If the credit balance occurs after the first day of class of a payment period (the school can tell you this date), the school must pay you the credit balance no later than 14 days after the date the balance occurs.

- If the credit balance occurs on or before the first day of class of a payment period, the school must pay you the credit balance no later than 14 days after the first day of class of the payment period.

If you are a parent borrower, you may authorize the school to pay the credit balance to the student.

**14. Canceling your loan.** Before your loan money is disbursed, you may cancel all or part of your loan at any time by notifying the school. After your loan money is disbursed, there are two ways to cancel all or part of your loan:

- **You may notify the school (within certain timeframes).** If the school obtains your written confirmation of the types and amounts of Title IV loans that you want to receive for an award year before crediting loan money to your or the student's account at the school, you may tell the school that you want to cancel all or part of that loan within 14 days after the date the school notifies you of your right to cancel all or part of the loan, or by the first day of the school's payment period, whichever is later (the school can tell you the first day of the payment period).

  If the school does not obtain your written confirmation of the types and amounts of loans you want to receive before crediting the loan money to your or the student's account, you may cancel all or part of that loan by informing the school within 30 days of the date the school notifies you of your right to cancel all or part of the loan.

  If you ask the school to cancel all or part of your loan within the timeframes described above, the school will return the canceled loan amount to us. If you ask the school to cancel all or part of your loan outside the timeframes described above, the school may process your cancellation request, but it is not required to do so.

- **You may return all or part of your loan to us.** Within 120 days of the date the school disburses your loan money (by crediting the loan money to your or the student's account at the school, by paying it directly to you, or both), you may cancel all or part of your loan by returning all or part of the loan money to us. Contact your servicer for guidance on how and where to return your loan money.

You do not have to pay interest or the loan fee on the part of your loan that is cancelled or returned within the timeframes described above. We will adjust your loan amount to eliminate any interest and loan fee that applies to the amount of the loan that is cancelled or returned.

**15. Repaying your loan.** The repayment period for each Direct PLUS Loan made under this MPN begins on the date of the final disbursement for that loan. This means that the repayment period for each loan you receive under this MPN will begin on a different date. Unless you receive a deferment or forbearance (see Item 21), your first payment on each loan will be due within 60 days of the final disbursement of that loan. Your servicer will notify you of the date your first payment is due.

You must make payments on your loan even if you do not receive a bill or repayment notice.

You must repay all of your Direct Loans under the same repayment plan, unless you want to repay your loans under the IBR Plan, the Pay As You Earn Plan, or the ICR Plan (see below) and you have other Direct Loans that do not qualify for repayment under those plans. In that case, you may select the IBR, Pay As You Earn, or ICR plan for the loans that are eligible for repayment under those plans, and may select a different repayment plan for the loans that may not be repaid under the IBR, Pay As You Earn, or ICR plan.

*Repayment plans for all Direct PLUS Loan borrowers*

The following repayment plans are available to all Direct PLUS Loan borrowers:

**Standard Repayment Plan**

Under this plan, you will make fixed monthly payments and repay your loan in full within 10 years (not including periods of deferment or forbearance) from the date the loan entered repayment. Your payments must be at least $50 a month ($600 a year) and will be more, if necessary, to repay the loan within the required time period.

**Graduated Repayment Plan**

## William D. Ford Federal Direct Loan Program
## Direct PLUS Loan Borrower's Rights and Responsibilities Statement

Under this plan, you will usually make lower payments at first, and your payments will gradually increase over time. You will repay your loan in full within 10 years (not including periods of deferment or forbearance) from the date the loan entered repayment. Your monthly payment must at least be equal to the amount of interest that accrues each month. No single payment will be more than three times greater than any other payment.

### Extended Repayment Plan

You are eligible for this plan only if **(1)** you have an outstanding balance on Direct Loan Program loans that exceeds $30,000, and **(2)** you had no outstanding balance on a Direct Loan Program loan as of October 7, 1998 or on the date you obtained a Direct Loan Program loan after October 7, 1998.

Under this plan, you will repay your loan in full over a period not to exceed 25 years (not including periods of deferment or forbearance) from the date the loan entered repayment. You may choose to make fixed monthly payments or graduated monthly payments that start out lower and gradually increase over time. Your payments must be at least $50 a month ($600 a year) and will be more, if necessary, to repay the loan within the required time period. If you make graduated payments, your monthly payment must at least be equal to the amount of interest that accrues each month. No single payment under the graduated option will be more than three times greater than any other payment.

***Additional repayment plans only for graduate and professional student Direct PLUS Loan borrowers***

***NOTE: Parent Direct PLUS Loan borrowers may not repay their Direct PLUS Loans under these plans.***

If you are a graduate or professional student Direct PLUS Loan borrower, the following additional repayment plans are available:

### Income-Based Repayment Plan (IBR Plan)

Under the IBR Plan, your monthly payment amount is generally 15% (10% if you are a new borrower; see Note below) of your annual discretionary income, divided by 12. Discretionary income for this plan is the difference between your adjusted gross income and 150% of the poverty guideline amount for your state of residence and family size. If you are married and file a joint federal income tax return, the income used to determine your IBR Plan payment amount will be the combined adjusted gross income of you and your spouse.

To initially qualify for the IBR Plan and to continue to make payments that are based on your income, the amount you would be required to pay on your eligible student loans under the IBR Plan (as described above) must be less than the amount you would have to pay under the Standard Repayment Plan. If your IBR Plan payment amount is less than the amount you would have to pay under the Standard Repayment Plan, you are considered to have a "partial financial hardship."

If you are married and file a joint federal income tax return, the loan amount we use to determine whether you have a partial financial hardship will include your eligible loans and your spouse's eligible loans.

While you are repaying under the IBR Plan, you must annually provide documentation of your income and certify your family size so that we may determine whether you continue to have a partial financial hardship. Your monthly payment amount may be adjusted annually based on the updated income and family size information that you provide. If we determine that you no longer have a partial financial hardship, you may remain on the IBR Plan, but your monthly payment will no longer be based on your income. Instead, your monthly payment will be what you would be required to pay under the Standard Repayment Plan, based on the amount you owed on your eligible loans at the time you entered the IBR Plan.

Under the IBR Plan, if your loan is not repaid in full after you have made the equivalent of 25 years (20

years if you are a new borrower) of qualifying monthly payments and at least 25 years (20 years if you are a new borrower) have elapsed, any remaining loan amount will be forgiven. You may have to pay federal income tax on the loan amount that is forgiven.

**Note:** You are a new borrower for the IBR Plan if you have no outstanding balance on a Direct Loan Program or FFEL Program loan on July 1, 2014, or if you have no outstanding balance on a Direct Loan Program or FFEL Program loan on the date you obtain a Direct Loan Program loan after July 1, 2014. Your servicer will determine whether you are a new borrower based on the information about your loans in the U.S. Department of Education's National Student Loan Data System.

### Pay As You Earn Repayment Plan (Pay As You Earn Plan)

Under the Pay As You Earn Plan, your monthly payment amount is generally 10% of your annual discretionary income, divided by 12. Discretionary income for this plan is the difference between your adjusted gross income and 150% of the poverty guideline amount for your state of residence and family size. If you are married and file a joint federal income tax return, the income used to determine your Pay As You Earn Plan payment amount will be the combined adjusted gross income of you and your spouse.

The Pay As You Earn Plan is available only to new borrowers. You are a new borrower for the Pay As You Earn Plan if:

**(1)** You had no outstanding balance on a Direct Loan Program or FFEL Program loan as of October 1, 2007, or you have no outstanding balance on a Direct Loan Program or FFEL Program loan when you obtain a new loan on or after October 1, 2007, and

**(2)** You receive a disbursement of a Direct Subsidized Loan, Direct Unsubsidized Loan, or student Direct PLUS Loan (a Direct PLUS Loan made to a graduate or professional student) on or after October 1, 2011, or you receive a Direct Consolidation Loan based on an application received on or after October 1, 2011. However, you are not considered to be a new borrower for the Pay As You Earn Plan if the Direct Consolidation Loan you receive repays loans that would make you ineligible under part **(1)** of this definition.

In addition to being a new borrower, to initially qualify for the Pay As You Earn Plan and to continue to make payments that are based on your income, the amount you would be required to pay on your eligible student loans under the Pay As You Earn Plan (as described above) must be less than the amount you would have to pay under the Standard Repayment Plan. If your Pay As You Earn Plan payment amount is less than the amount you would have to pay under the Standard Repayment Plan, you are considered to have a "partial financial hardship."

If you are married and file a joint federal income tax return, the loan amount we use to determine whether you have a partial financial hardship will include your eligible loans and your spouse's eligible loans.

While you are repaying under the Pay As You Earn Plan, you must annually provide documentation of your income and certify your family size so that we may determine whether you continue to have a partial financial hardship. Your monthly payment amount may be adjusted annually based on the updated income and family size information that you provide. If we determine that you no longer have a partial financial hardship, you may remain on the Pay As You Earn Plan, but your monthly payment will no longer be based on your income. Instead, your monthly payment will be what you would be required to pay under the Standard Repayment Plan, based on the amount you owed on your eligible loans at the time you entered the Pay As You Earn Plan.

Under the Pay As You Earn Plan, if your loan is not repaid in full after you have made the equivalent of 20

years of qualifying monthly payments and at least 20 years have elapsed, any remaining loan amount will be forgiven. You may have to pay federal income tax on the loan amount that is forgiven.

### Income Contingent Repayment Plan (ICR Plan)

Under this plan, your monthly payment amount will be either 20% of your discretionary income or a percentage of what you would repay under a Standard Repayment Plan with a 12-year repayment period, whichever is less. Discretionary income for this plan is the difference between your adjusted gross income and the poverty guideline amount for your state of residence and family size. If you are married and file a joint federal income tax return, the income used to determine your ICR Plan payment amount will be the combined adjusted gross income of you and your spouse. Until we obtain the information needed to calculate your monthly payment amount, your payment will equal the amount of interest that accrues monthly on your loan unless you request a forbearance.

While you are repaying under the ICR Plan, you must annually provide documentation of your income and certify your family size. Your monthly payment amount may be adjusted annually based on the updated income and family size information that you provide.

Under the ICR Plan, if your loan is not repaid in full after you have made the equivalent of 25 years of qualifying monthly payments and at least 25 years have elapsed, any remaining loan amount will be forgiven. You may have to pay federal income tax on the loan amount that is forgiven.

***Additional repayment plan information***

If you are a graduate or professional student, these repayment plans will be explained in more detail during your exit counseling session.

Under each plan, the number or amount of payments may need to be adjusted to reflect capitalized interest and/or new loans made to you.

If you can show to our satisfaction that the terms and conditions of the above repayment plans are not adequate to meet your exceptional circumstances, we may provide you with an alternative repayment plan.

If you do not choose a repayment plan, we will place you on the Standard Repayment Plan.

The "Repaying Your Loans" charts at the end of this Borrower's Rights and Responsibilities Statement allow you to estimate the monthly and total amounts you would repay under the repayment plans listed above based on various initial loan amounts.

You can also use the Repayment Estimator at StudentAid.gov/Repayment-Estimator to estimate your monthly and total payment amounts under the different repayment plans and to evaluate your eligibility for the IBR and Pay As You Earn plans. The calculators are for informational purposes only. Your servicer will make the official determination of your payment amount and, for the IBR and Pay As You Earn plans, your eligibility for the plan.

You may change repayment plans at any time after you have begun repaying your loan. However, you may not change to a different repayment plan that has a maximum repayment period of less than the number of years your loan has already been in repayment, except that you may change to the IBR Plan, the Pay As You Earn Plan, or the ICR Plan at any time. There is no penalty if you make loan payments before they are due, or pay more than the amount due each month (prepayments).

> **Note to Endorser:** If you are making payments on the borrower's Direct PLUS Loan, you may request a change of repayment plans by contacting your servicer.

We apply your payments made under any repayment plan other than the IBR Plan and the Pay As You Earn Plan in the following order: **(1)** late charges and collection costs, **(2)** outstanding interest, and **(3)** outstanding principal.

**William D. Ford Federal Direct Loan Program**
**Direct PLUS Loan Borrower's Rights and Responsibilities Statement**

We apply your payments made under the IBR Plan or the Pay As You Earn Plan in the following order: **(1)** outstanding interest, **(2)** late charges and collection costs, and **(3)** outstanding principal.

We apply any prepayments in accordance with the Act. Your servicer can provide more information about how prepayments are applied.

When you have repaid a loan in full, your servicer will send you a notice telling you that you have paid off your loan. You should keep this notice in a safe place.

**16. Transfer of loan.** We may transfer one or all of your loans to another servicer without your consent. If there is a change in the address to which you must send payments or direct communications, we will notify you of the new servicer's name, address and telephone number, the effective date of the transfer, and the date when you must begin sending payments or directing communications to that servicer. Transfer of a loan to a different servicer does not affect your rights and responsibilities under that loan.

**17. Late charges and collection costs.** If you do not make any part of a payment within 30 days after it is due, we may require you to pay a late charge. This charge will not be more than six cents for each dollar of each late payment. If you do not make payments as scheduled, we may also require you to pay other charges and fees involved in collecting your loan.

**18. Demand for immediate repayment.** The entire unpaid amount of your loan becomes due and payable (this is called "acceleration") if you:

- Receive loan money, but you or the student for whom you obtained the loan do not enroll at least half-time at the school that determined you were eligible to receive the loan;
- Use your loan money to pay for anything other than expenses related to your or the student's education at the school that determined you were eligible to receive the loan;
- Make a false statement that causes you to receive a loan that you are not eligible to receive; or
- Default on your loan.

**19. Defaulting on your loan.** Default (failing to repay your loan) is defined in detail in the Terms and Conditions section of your MPN (Section F). If you default:

- We will require you to immediately repay the entire unpaid amount of your loan.
- We may sue you, take all or part of your federal tax refund or other federal payments, and/or garnish your wages so that your employer is required to send us part of your salary to pay off your loan.
- We will require you to pay reasonable collection fees and costs, plus court costs and attorney fees.
- You will lose eligibility for other federal student aid and assistance under most federal benefit programs.
- You will lose eligibility for loan deferments.

*Note to Endorser:* If the borrower defaults on the loan, and you do not make payments on the loan, you may also be subject to the actions described above.

- We will also report your default to nationwide consumer reporting agencies (see Item 20, "Consumer reporting agency notification"). This will harm your credit history and may make it difficult for you to obtain credit cards, home or car loans, or other forms of consumer credit.

**20. Consumer reporting agency notification.** We will report information about your loan to nationwide consumer reporting agencies (commonly known as "credit bureaus") on a regular basis. This information will include the disbursement dates, amount, and repayment status of your loan (for example, whether you are current or delinquent in making payments). Your loan will be identified as an education loan.

If you default on a loan, we will also report this to nationwide consumer reporting agencies. We will notify you at least 30 days in advance that we plan to report default information to a consumer reporting agency unless you resume making payments on the loan within 30 days of the date of the notice. You will be given a chance to ask for a review of the debt before we report it.

If a consumer reporting agency contacts us regarding objections you have raised about the accuracy or completeness of any information we have reported, we are required to provide the agency with a prompt response.

*Note to Endorser:* If the borrower of a Direct PLUS Loan becomes delinquent in making payments or defaults on the loan, we may also report your name to consumer reporting agencies in connection with the delinquent or defaulted loan.

**21. Deferment and forbearance (postponing payments).**

If you meet certain requirements, you may receive a **deferment** that allows you to temporarily stop making payments on your loan. If you cannot make your scheduled loan payments, but do not qualify for a deferment, we may give you a **forbearance**. A forbearance allows you to temporarily stop making payments on your loan, temporarily make smaller payments, or extend the time for making payments.

*Deferment*

You may receive a deferment:

- While you are enrolled at least half-time at an eligible school;
- During the 6-month period after you cease to be enrolled at least half-time;
- While the student for whom you obtained a Direct PLUS Loan is enrolled at least half-time at an eligible school;
- During the 6-month period after the student for whom you obtained a Direct PLUS Loan ceases to be enrolled at least half-time;
- While you are in a full-time course of study in a graduate fellowship program;
- While you are in an approved full-time rehabilitation program for individuals with disabilities;
- While you are unemployed (for a maximum of three years; you must be diligently seeking, but unable to find, full-time employment);
- While you are experiencing an economic hardship (including Peace Corps service), as defined in the Act (for a maximum of three years);
- While you are serving on active duty during a war or other military operation or national emergency or performing qualifying National Guard duty during a war or other military operation or national emergency and, if you were serving on or after October 1, 2007, for an additional 180-day period following the demobilization date for your qualifying service; or
- If you are a member of the National Guard or other reserve component of the U.S. Armed Forces (current or retired) and you are called or ordered to active duty while you are enrolled at least half-time at an eligible school or within 6 months of having been enrolled at least half-time, during the 13 months following the conclusion of your active duty service, or until you return to enrolled student status on at least a half-time basis, whichever is earlier.

You may be eligible to receive additional deferments if, at the time you received your first Direct Loan, you had an outstanding balance on a loan made under the FFEL Program before July 1, 1993. If you meet this requirement, contact your servicer for information about additional deferments that may be available.

You may receive a deferment while you are enrolled in school on at least a half-time basis (and, if you are a

graduate or professional student, during the 6-month period after you cease to be enrolled at least half-time) if (1) you submit a deferment request to your servicer along with documentation of your eligibility for the deferment, or (2) your servicer receives information from the school you are attending that indicates you are enrolled at least half-time. If your servicer processes a deferment based on information received from your school, you will be notified of the deferment and will have the option of canceling the deferment and continuing to make payments on your loan.

For all other deferments, you (or, for a deferment based on active military duty or qualifying National Guard duty during a war or other military operation or national emergency, your representative) must submit a deferment request to your servicer, along with documentation of your eligibility for the deferment. In certain circumstances, you may not be required to provide documentation of your eligibility if your servicer confirms that you have been granted the same deferment for the same time period on a FFEL Program loan. Your servicer can provide you with a deferment request form that explains the eligibility and documentation requirements for the type of deferment you are requesting. You may also obtain deferment request forms and information on deferment eligibility requirements from your servicer's web site.

If you are in default on your loan, you are not eligible for a deferment.

You are responsible for paying the interest on a Direct PLUS Loan during a period of deferment.

*Note to Endorser:* You are not eligible to receive a deferment.

*Forbearance*

We may give you a forbearance if you are temporarily unable to make your scheduled loan payments for reasons including, but not limited to, financial hardship and illness.

We will give you a forbearance if:

- You are serving in a medical or dental internship or residency program, and you meet specific requirements;
- The total amount you owe each month for all of the student loans you received under Title IV of the Act (Direct Loan Program loans, FFEL Program loans, and Federal Perkins Loans) is 20% or more of your total monthly gross income (for a maximum of three years);
- You are serving in a national service position for which you receive a national service award under the National and Community Service Trust Act of 1993. In some cases, the interest that accrues on a qualified loan during the service period will be paid by the Corporation for National and Community Service;
- You qualify for partial repayment of your loans under a student loan repayment program administered by the Department of Defense; or
- You are called to active duty in the U.S. Armed Forces.

To request a forbearance, contact your servicer. Your servicer can explain the eligibility and documentation requirements for the type of forbearance you are requesting. You may also obtain information on forbearance eligibility requirements from your servicer's web site.

Under certain circumstances, we may also give you a forbearance without requiring you to submit a request or documentation. These circumstances include, but are not limited to, the following:

- Periods necessary for us to determine your eligibility for a loan discharge;
- A period of up to 60 days in order for us to collect and process documentation related to your request for a deferment, forbearance, change in repayment plan, or consolidation loan

**William D. Ford Federal Direct Loan Program**
**Direct PLUS Loan Borrower's Rights and Responsibilities Statement**

(we do not capitalize the interest that is charged during this period);

- Periods when you are involved in a military mobilization, or a local or national emergency; or

- Periods necessary to align repayment of your Direct PLUS Loans that do not qualify for a 6-month post-enrollment deferment with other Direct PLUS Loans that qualify for this deferment, or with Direct Subsidized Loans and Direct Unsubsidized Loans that have a grace period. Contact your servicer for more information.

You are responsible for paying the interest on a Direct PLUS Loan during a period of forbearance.

> ***Note to Endorser:*** Although you are not eligible to receive a deferment, you may receive a forbearance.

**22. Discharge (having your loan forgiven).**

*Loan discharge due to death, bankruptcy, total and permanent disability, school closure, false certification, identity theft, or unpaid refund*

We will discharge (forgive) your loan if:

- You die, or the child on whose behalf you obtained a Direct PLUS Loan dies. Your servicer must receive acceptable documentation (as defined in the Act) of your death or the child's death.

- Your loan is discharged in bankruptcy after you have proven to the bankruptcy court that repaying the loan would cause undue hardship. Direct Loans are not otherwise automatically discharged if you file for bankruptcy.

- You become totally and permanently disabled (as defined in the Act) and meet certain other requirements.

In certain cases, we may also discharge all or a portion of your loan if:

- You (or the child on whose behalf you obtained a Direct PLUS Loan) could not complete a program of study because the school closed;

- Your loan eligibility was falsely certified by the school;

- A loan in your name was falsely certified as a result of a crime of identity theft; or

- The school did not pay a refund of your loan money that it was required to pay under federal regulations.

*Public Service Loan Forgiveness*

A Public Service Loan Forgiveness program is also available. Under this program, we will forgive the remaining balance due on your eligible Direct Loan Program loans after you have made 120 payments on those loans (after October 1, 2007) under certain repayment plans while you are employed full-time in certain public service jobs. The required 120 payments do not have to be consecutive.

*Additional loan discharge information*

The Act may provide for certain loan forgiveness or repayment benefits on your loans in addition to the benefits described above. If other forgiveness or repayment options become available, your servicer will provide information about these benefits.

For a discharge based on your death or the death of the child on whose behalf you obtained a Direct PLUS Loan, a family member must contact your loan servicer. To request loan discharge or forgiveness based on one of the other conditions described above (except for a discharge due to bankruptcy), you must complete an application. Your servicer can tell you how to obtain an application.

In some cases you may assert, as a defense against collection of your loan, that the school did something wrong or failed to do something that it should have done. You can make such a defense against repayment only if the school's act or omission directly relates to your loan or to the educational services that the loan was intended to pay for, and if what the school did or did not do would give rise to a legal cause of action against the school under applicable state law. If you believe that you have a defense against repayment of your loan, contact your servicer.

We do not guarantee the quality of the academic programs provided by schools that participate in federal student financial aid programs. You must repay your loan even if you or (if you are a parent borrower) the student do not complete the education paid for with the loan, are unable to obtain employment in the field of study for which the school provided training, or are dissatisfied with, or do not receive, the education paid for with the loan.

> ***Note to Endorser:*** If we discharge the full amount of the borrower's loan for any of the conditions described above, you are no longer obligated to make any payments on the loan. However, if a loan is reinstated after a discharge, you will again be obligated to make payments on the loan if the borrower does not make payments.

**23. Loan consolidation.** A Direct Consolidation Loan Program is available that allows you to consolidate one or more of your eligible federal education loans into a new loan with a single monthly payment, and may allow you to extend the period of time that you have to repay your loans. This may make it easier for you to repay your loans. However, you will pay more interest if you extend your repayment period through consolidation, since you will be making payments for a longer period of time. Contact your servicer for more information about loan consolidation.

> ***Note to Endorser:*** You are not eligible to apply for a Direct Consolidation Loan to repay a Direct PLUS Loan for which you are the endorser.

**24. Department of Defense and other federal agency loan repayment.** Under certain circumstances, military personnel may have their federal education loans repaid by the Secretary of Defense. This benefit is offered as part of a recruitment program that does not apply to individuals based on their previous military service or to those who are not eligible for enlistment in the U.S. Armed Forces. For more information, contact your local military service recruitment office.

Other agencies of the federal government may also offer student loan repayment programs as an incentive to recruit and retain employees. Contact the agency's human resources department for more information.

**William D. Ford Federal Direct Loan Program**
**Direct PLUS Loan Borrower's Rights and Responsibilities Statement**

**Repaying Your Loans: Standard, Graduated, and Extended Repayment Plans**
**(These plans are available to all Direct PLUS Loan borrowers.)**

| Debt | Standard Repayment Plan (10-year repayment period) | | Graduated Repayment Plan (10-year repayment period) | | | Extended-Fixed Repayment Plan (25-year repayment period) | | Extended-Graduated Repayment Plan (25-year repayment period) | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Payment | Total Paid | Minimum Payment | Maximum Payment | Total Paid | Payment | Total Paid | Minimum Payment | Maximum Payment | Total Paid |
| $10,000 | $135 | $16,192 | $88 | $227 | $17,865 | N/A | N/A | N/A | N/A | N/A |
| $20,000 | $270 | $32,384 | $175 | $453 | $35,731 | N/A | N/A | N/A | N/A | N/A |
| $30,000 | $405 | $48,577 | $263 | $680 | $53,597 | N/A | N/A | N/A | N/A | N/A |
| $40,000 | $540 | $64,769 | $350 | $906 | $71,463 | $378 | $113,302 | $350 | $457 | $119,720 |
| $50,000 | $675 | $80,961 | $438 | $1,133 | $89,329 | $472 | $141,627 | $438 | $571 | $149,662 |
| $60,000 | $810 | $97,153 | $525 | $1,359 | $107,195 | $567 | $169,953 | $525 | $686 | $179,585 |
| $70,000 | $945 | $113,345 | $613 | $1,586 | $125,061 | $661 | $198,278 | $613 | $800 | $209,518 |
| $80,000 | $1,079 | $129,538 | $700 | $1,812 | $142,927 | $755 | $226,604 | $700 | $914 | $239,457 |
| $90,000 | $1,214 | $145,730 | $788 | $2,039 | $160,793 | $850 | $254,929 | $788 | $1,028 | $269,396 |
| $100,000 | $1,349 | $161,922 | $875 | $2,265 | $178,658 | $944 | $283,255 | $875 | $1,143 | $299,328 |

Notes:

- All estimated payments shown in the chart above are calculated using a fixed interest rate of 10.5%.
- The payment amounts shown in this chart are estimates. Your actual payment amount may differ from these estimates depending on factors such as the interest rate(s) of your loans and the amount of your loan debt. Your loan servicer will provide you with your actual monthly payment amount after you select a repayment plan.
- For the Extended Repayment Plan, an entry of "N/A" means that you are not eligible for this plan based on the loan amount owed.
- You may use the Repayment Estimator at StudentAid.gov/Repayment-Estimator to estimate payment amounts based on your actual loan debt.

**Repaying Your Loans: Income-Based Repayment Plan (IBR Plan) for Borrowers Who Are Not New Borrowers on or after July 1, 2014**
**(The IBR Plan is available only to graduate and professional student Direct PLUS Loan borrowers.)**

| Debt | Starting income of $25,000 | | | | Starting income of $40,000 | | | | Starting income of $60,000 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Initial Payment | Final Payment | Total Paid | Time to Repay (Mos.) | Initial Payment | Final Payment | Total Paid | Time to Repay (Mos.) | Initial Payment | Final Payment | Total Paid | Time to Repay (Mos.) |
| $20,000 | $97 | $245 | $43,861 | 219 | Not Eligible | - | - | - | Not Eligible | - | - | - |
| $40,000 | $97 | $491 | $89,628 | 300 | $285 | $491 | $72,680 | 173 | Not Eligible | - | - | - |
| $60,000 | $97 | $642 | $94,175 | 300 | $285 | $736 | $148,999 | 268 | $535 | $736 | $97,093 | 143 |
| $80,000 | $97 | $642 | $94,175 | 300 | $285 | $981 | $193,464 | 300 | $535 | $981 | $156,150 | 193 |
| $100,000 | $97 | $642 | $94,175 | 300 | $285 | $1,227 | $201,322 | 300 | $535 | $1,227 | $236,102 | 251 |

**William D. Ford Federal Direct Loan Program**
**Direct PLUS Loan Borrower's Rights and Responsibilities Statement**

**Repaying Your Loans: Pay As You Earn Repayment Plan (Pay As You Earn Plan) for Eligible Borrowers and IBR Plan for New Borrowers on or after July 1, 2014**

**(The Pay As You Earn Plan and the IBR Plan are available only to graduate and professional student Direct PLUS Loan borrowers.)**

| Debt | Starting income of $25,000 | | | | Starting income of $40,000 | | | | Starting income of $60,000 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Initial Payment | Final Payment | Total Paid | Time to Repay (Mos.) | Initial Payment | Final Payment | Total Paid | Time to Repay (Mos.) | Initial Payment | Final Payment | Total Paid | Time to Repay (Mos.) |
| $20,000 | $65 | $245 | $38,488 | 240 | $190 | $245 | $31,254 | 134 | Not Eligible | - | - | - |
| $40,000 | $65 | $309 | $40,127 | 240 | $190 | $491 | $85,707 | 240 | $356 | $491 | $64,729 | 143 |
| $60,000 | $65 | $309 | $40,127 | 240 | $190 | $625 | $89,727 | 240 | $356 | $736 | $129,366 | 222 |
| $80,000 | $65 | $309 | $40,127 | 240 | $190 | $625 | $89,727 | 240 | $356 | $981 | $154,976 | 240 |
| $100,000 | $65 | $309 | $40,127 | 240 | $190 | $625 | $89,727 | 240 | $356 | $1,046 | $155,860 | 240 |

**Repaying Your Loans: Income-Contingent Repayment Plan (ICR Plan)**

**(The ICR Plan is available only to graduate and professional student Direct PLUS Loan borrowers.)**

| Debt | Starting income of $25,000 | | | | Starting income of $40,000 | | | | Starting income of $60,000 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Initial Payment | Final Payment | Total Paid | Time to Repay (Mos.) | Initial Payment | Final Payment | Total Paid | Time to Repay (Mos.) | Initial Payment | Final Payment | Total Paid | Time to Repay (Mos.) |
| $20,000 | $151 | $199 | $43,436 | 249 | $193 | $219 | $33,513 | 161 | $219 | $251 | $30,761 | 131 |
| $40,000 | $225 | $423 | $96,630 | 274 | $385 | $438 | $67,027 | 161 | $438 | $502 | $61,523 | 131 |
| $60,000 | $225 | $694 | $146,629 | 300 | $475 | $658 | $106,605 | 175 | $658 | $754 | $92,284 | 131 |
| $80,000 | $225 | $1,018 | $162,256 | 300 | $475 | $939 | $176,175 | 233 | $809 | $1,015 | $124,521 | 240 |
| $100,000 | $225 | $1,018 | $163,256 | 300 | $475 | $1,360 | $281,310 | 298 | $809 | $1,296 | $171,619 | 158 |

Notes:

- For the IBR Plan, the Pay As You Earn Plan, and the ICR Plan, the estimated payment amounts shown in the charts above are calculated using a fixed interest rate of 8.25% and the 2013 Poverty Guidelines (published by the U.S. Department of Health and Human Services). For the ICR Plan, the calculations also use the 2013 income percentage factors. For all three plans, the calculations are based on an assumption that you are single and do not have any children or anyone else in your household, that you live in one of the 48 contiguous states, and that your income will increase at a rate of 5% per year.
- The payment amounts shown in these charts are estimates. Your actual payment amount may differ from these estimates depending on factors such as the interest rate(s) of your loans, the amount of your loan debt, your income, and whether and how quickly your income increases.
- For the IBR Plan and the Pay As You Earn Plan, an entry of "Not Eligible" means that you would not have a partial financial hardship based on the loan debt and starting income shown and therefore would not be eligible to initially select the plan.
- You may use the Repayment Estimator at StudentAid.gov/Repayment-Estimator to evaluate your eligibility for the IBR and Pay As You Earn plans, and to estimate your payment amounts under the IBR, Pay As You Earn, and ICR plans based on your actual loan debt, income, family size, and state of residence.

### TRANSACTION HISTORY

| | |
|---|---|
| Your identity was confirmed by the PIN Web site on | October 25 2014, 11:22:25 AM |
| You agreed to use an electronic MPN on | October 25 2014, 11:52:00 AM |
| You reviewed your draft MPN and confirmed that you read, understood, and agreed to the Borrower Request, Certifications, Authorizations, and Understandings, Promise to Pay, MPN Terms and Conditions, Important Notices and Borrower's Rights and Responsibilities Statement on | October 25 2014, 11:52:45 AM |
| You signed your MPN on | October 25 2014, 11:52:59 AM |
| You reviewed your signed MPN on | October 25 2014, 11:53:00 AM |
| You confirmed your acceptance of the terms and conditions of this MPN and submitted it to us on | October 25 2014, 11:54:10 AM |

EXHIBIT

C

# United States Senate

### WASHINGTON, DC 20510

March 7, 2025

The Honorable Linda McMahon
Secretary
U.S. Department of Education
400 Maryland Avenue, SW
Washington, DC 20202

Dear Secretary McMahon:

We write with great concern regarding the Department of Education's ("the Department") recent action to suspend access to all income-driven repayment (IDR) plans and online loan consolidation applications and to demand information on behalf of the millions of student loan borrowers[1] who have been stripped of their ability to access these critical pieces of the student loan safety net.[2] At a time when Americans across the country are struggling to meet the costs of healthcare, food, housing, child care and other basic needs, it is unacceptable for the Trump Administration to take any action that will increase costs or make life harder for everyday Americans.

Yet, the Department has done just that. On February 24, 2025, it was first reported[3] that the Department had blocked access to all IDR and online loan consolidation applications without warning, without Congressional notification, and without clear guidance for borrowers on what they should do next or expect in the future. Over 12 million student loan borrowers rely on IDR plans,[4] which tie monthly payments to borrower income, to keep monthly costs manageable in order to afford basic needs. Without clear guidance on next steps, working class borrowers, including teachers, nurses, veterans and other public servants who rely on these plans, are in limbo.

This most recent attack against student loan borrowers comes as President Trump and Republicans in Congress are pursuing an extremist right-wing agenda to gut affordable loan repayment options in order to pay for tax cuts for the wealthy.[5]

While the Department was tasked with implementing a judicial ruling to suspend a *single* IDR plan—the Saving on a Valuable Education plan (known as SAVE)[6], the Department inexplicably and confusingly chose to also suspend access to *every other* IDR plan, which includes the Pay as You Earn (PAYE), Income-Contingent (ICR), and Income-Based (IBR) repayment plans, and

---

[1] https://studentaid.gov/data-center/student/portfolio
[2] https://www.nytimes.com/2025/02/28/business/student-loan-repayment-plans.html
[3] https://www.forbes.com/sites/adamminsky/2025/02/24/department-of-education-takes-down-key-student-loan-forgiveness-and-repayment-applications/
[4] https://studentaid.gov/data-center/student/portfolio
[5] https://www.cnbc.com/2025/02/10/student-loan-borrowers-could-see-bills-balloon-under-gop-proposal.html
[6] https://ago.mo.gov/wp-content/uploads/2024-8-9-Eighth-Circuit-Student-Loan-Win.pdf

started blocking all online loan consolidation. Borrowers have relied on many of these plans for decades and this sudden and reckless action means millions of borrowers have fewer repayment options available and are unsure of what to do in order to manage their debt. Removing the ability of borrowers to apply for or re-enroll in an IDR plan can have devastating consequences that can impact a borrower's ability to afford basic needs both now and in the future.[7]

Roughly one-third of borrowers aged 25-49 depend on IDR[8], and over 2 million borrowers[9] who are enrolled in the public service loan forgiveness (PSLF) program count on IDR in order to help them achieve forgiveness after 10 years of service. However, over the past year, many PSLF borrowers have been denied the forgiveness they have been promised due to the SAVE plan challenges in the courts. Approximately 8 million borrowers are currently in a forbearance due to the suspension of the SAVE plan[10], and those borrowers are now blocked from enrolling in any other plan that could allow them to begin accruing credit toward IBR or PSLF forgiveness due to circumstances beyond their control.

As a result, thousands of PSLF borrowers are losing valuable credit toward forgiveness[11] that will delay the debt cancellation they are entitled to by months, or even years. Before this recent processing pause, many PSLF borrowers attempted to leave the SAVE plan and enroll in another IDR plan. However, over 1 million IDR applications have still not been processed, and now those borrowers will spend even more time in a non-qualifying forbearance, despite taking steps to leave. This is unacceptable.

Further, borrowers who are struggling to make monthly payments or who have experienced a change in circumstance—such as the thousands of federal employees who have been purportedly fired by Elon Musk and his DOGE lackeys[12]—are now unable to apply for and enroll in a more affordable repayment plan. This will have real financial consequences for these borrowers. Some borrowers that miss loan payments due to financial hardship report over 100-point drops in their credit score,[13] which has lasting impacts on their ability to rent an apartment, take out a car loan, or secure a home mortgage.[14]

As a steward of federal financial aid dollars, the Department is required by law[15] to ensure borrowers have the information and resources they need to repay their student loans via any repayment plan they qualify for. But as evidenced by the lack of communication regarding the removal of the IDR and online loan consolidation applications, and the absence of clear next steps for borrowers stuck in limbo, we do not believe the Department has acted in accordance with that responsibility. For example, borrowers currently enrolled in IDR plans have to annually

---

[7] https://www.wsj.com/personal-finance/student-loan-payment-pause-resumes-credit-score-498763af
[8] https://www.americanprogress.org/article/project-2025-would-increase-costs-block-debt-cancellation-for-student-loan-borrowers/
[9] https://www.nytimes.com/2025/02/28/business/student-loan-repayment-plans.html
[10] https://www.forbes.com/sites/adamminsky/2025/01/16/8-million-student-loan-borrowers-will-have-no-payments-for-most-of-2025-as-loan-forgiveness-remains-stalled/
[11] https://www.nytimes.com/2025/02/28/business/student-loan-repayment-plans.html
[12] https://nymag.com/intelligencer/article/how-many-federal-employees-fired-jobs-cut-trump-doge.html
[13] https://www.wsj.com/personal-finance/student-loan-payment-pause-resumes-credit-score-498763af
[14] https://www.wsj.com/personal-finance/student-loan-payment-pause-resumes-credit-score-498763af
[15] https://www.law.cornell.edu/uscode/text/20/1087e

recertify their income to stay enrolled in those plans, but the form needed to complete recertification has been removed from the Department's "Income-Driven Repayment (IDR) Plan Request" website[16] because it is the same form used to apply for IDR plans. Consequently, borrowers are currently receiving notices from their student loan servicers instructing them to submit their IDR recertification forms, but if they go to the Department's website to complete the form, they will find it is unavailable, with no guidance for what they should do next.

Given the looming recertification deadlines for thousands of borrowers and the inability of millions more to accrue valuable time towards IBR or PSLF forgiveness, it is critical the Department immediately restore the IDR and loan consolidation applications and provide accurate, timely responses on next steps for the millions of borrowers that have applied for, are currently enrolled in, or need to enroll in an IDR plan, or consolidate their loans.

We request you provide written answers to the following questions as soon as possible, but not later than March 14, 2025:

1. How long will the IDR and loan consolidation applications be offline?

2. How long will servicers be required to pause all processing of IDR or loan consolidation applications?

3. Given IBR is a repayment plan that is not subject to the court injunction[17], will the Department restore the ability to apply for, or re-enroll in, IBR ahead of the other repayment plans?

4. When will the Department process the over 1 million IDR applications that have been submitted but not processed before the decision was made to halt all processing?

5. For borrowers currently enrolled in PAYE, ICR, or IBR that have recertification deadlines that fall within the IDR processing pause, will their recertification deadlines be delayed or pushed back? If so, for how long?

6. For those borrowers facing recertification deadlines, when and through what mediums will the Department communicate whether their deadlines will be pushed back? If their recertification deadlines will not be pushed back, will they be given clear instruction on how to proceed in order to stay enrolled in their current plan?

7. For borrowers that have already submitted IDR applications that are still in process due to a failure to process them in time, will they be subject to negative credit reporting? If so, how many borrowers will face negative credit reporting due to issues beyond their control? What steps will the Department take to ensure that the Department's decision to suspend application processing does not result in financial harm to borrowers?

---

[16] https://studentaid.gov/idr/
[17] https://www.law.cornell.edu/uscode/text/20/1098e

8. Will the Department commit to ensuring that any borrowers who face negative credit reporting resulting from the Department's actions will not be adversely impacted, including by working with credit reporting agencies to address any adverse impacts to affected borrowers' credit scores?

9. For borrowers that have submitted paper IDR or loan consolidation applications, what will happen to those applications? Will the Department hold them until they can be processed or will borrowers have to resubmit? If borrowers need to resubmit applications, will they be notified of their need to do so, and how will the Department notify borrowers?

10. Will the Department commit to allowing all PSLF borrowers that have been subject to the SAVE forbearance or this IDR processing pause to buy back any time spent in an unqualifying forbearance?

11. How many staff at Federal Student Aid have been laid off or put on paid administrative leave since January 20th, 2025? How will the Department ensure borrowers are not adversely harmed by these staffing changes?

Thank you for your attention to this urgent matter. We look forward to your prompt response.

Sincerely,


Bernard Sanders
United States Senator

Ron Wyden
United States Senator


Peter Welch
United States Senator

Tina Smith
United States Senator


Elizabeth Warren
United States Senator

Richard J. Durbin
United States Senator

Richard Blumenthal
United States Senator

Ben Ray Lujan
United States Senator

Tim Kaine
United States Senator

Sheldon Whitehouse
United States Senator

Angus S. King, Jr.
United States Senator

Jack Reed
United States Senator

Edward J. Markey
United States Senator

Mazie K. Hirono
United States Senator

Jeffrey A. Merkley
United States Senator

Tammy Duckworth
United States Senator

Andy Kim
United States Senator

Tammy Baldwin
United States Senator

Chris Van Hollen
United States Senator

Cory A. Booker
United States Senator

Charles E. Schumer
United States Senator

Alex Padilla
United States Senator

Kirsten Gillibrand
United States Senator

Patty Murray
United States Senator

Amy Klobuchar
United States Senator