IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ASHLEY N. MORGAN,<br>  Plaintiff | §<br>§<br>§ | |
| vs. | § | Civil Action No. 1:25-cv-00416 |
| | § | |
| LINDA MCMAHON, IN HER<br>OFFICIAL CAPACITY AS<br>SECRETARY OF THE UNITED<br>STATES DEPARTMENT OF<br>EDUCATION, AND THE UNITED<br>STATES DEPARTMENT OF<br>EDUCATION,<br>  Defendants | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |

**PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE RELIEF**

  Plaintiff Ashley N. Morgan (Morgan) moves for a temporary restraining order and preliminary injunction, under the authority of Federal Rule of Civil Procedure 65, the Administrative Procedure Act (5 USC § 705), and the All Writs Act (28 USC § 1651) against Defendants Linda McMahon, in her official capacity as the Secretary of the United States Department of Education (Secretary McMahon), and the United States Department of Education (the Department of Education). In support, Morgan has attached her Declaration as **Exhibit A** and Morgan would respectfully show the following:

### I.  BACKGROUND

  1.  Up until last month, Morgan had been on the Income-Based Repayment (IBR) and Pay as You Earn (PAYE) income-driven repayment plans for her federal student loans. Her deadline to recertify her income was March 1, 2025. Due to Defendants' actions, Morgan could not recertify her income and her monthly student loan payments more than quadrupled from $507.19 to $2,463.58.

1

2. Defendants Secretary McMahon and the Department of Education prevented Morgan from timely recertifying her income for her income-based repayment plans for her federal student loans. Morgan should be able to get back on her income-driven repayment plans[1] but is being prevented from doing so by Defendants because she still cannot recertify her income. Defendants also prevented Morgan from applying for a different income-driven repayment plan. Defendants removed access to the recertification and application forms on the studentaid.gov website on or about February 18, 2025. Defendants issued a memorandum to loan service providers instructing them not to accept or process the recertification or application forms for all income-driven repayment plans on or about February 26, 2025.[2][3]

3. Morgan's first payment of $2,463.58 was due on April 25, 2025. Morgan was able to obtain a temporary hardship forbearance from her loan service provider (Nelnet, Inc., hereinafter referred to as Nelnet) for a period of three months, and her $2,463.58 per month payments resume starting June 25, 2025. Interest continues to accrue during Morgan's hardship forbearance, and she has a finite amount of months of

---

[1] Borrowers can return to making payments based on income if they provide their loan service provider with updated income information. *See* https://studentaid.gov/manage-loans/repayment/plans/income-driven

[2] There are various types of income-driven repayment plans, which are referred to collectively as "income-driven repayment." The income-driven repayment plans include Income-Contingent Repayment (ICR) (1994), Income-Based Repayment (IBR) (2007), Pay as You Earn (PAYE) (2012), Revised Pay as You Earn (REPAYE) (2015), and Saving on a Valuable Education (SAVE) (2023).

[3] Danielle Douglas-Gabriel, *It could be months before affordable student loan repayment plans return*, The Washington Post, Feb. 28, 2025, https://www.washingtonpost.com/education/2025/02/27/student-loan-repayment-options-affordable-pause/

forbearance available. During the hardship forbearance, she cannot make qualifying payments toward loan forgiveness.

4. For the portion of Morgan's loans which she was repaying based on the IBR plan, an additional consequence of being unable to timely recertify her income is that her unpaid interest will capitalize (be added to the principal balance of her loans).[4] Additionally, Morgan may lose her eligibility to return to both the IBR or PAYE income-driven repayment plans in the future because of the Defendants' actions.[5]

5. Morgan faces a payment schedule which is not based on her income and will result in a default of her student loans. Morgan filed this suit seeking relief for the harm that Defendants' actions have caused her. Morgan contends that Defendants are unlawfully preventing Morgan from accessing income-driven repayment plans which Defendants have a mandatory statutory, regulatory, and/or contractual duty to provide Morgan. Morgan alleges that Defendants have failed to follow the negotiated rulemaking process prescribed by the Higher Education Act and Administrative Procedure Act and that Defendants' actions and failure to act are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

## II.    ARGUMENT AND AUTHORITY

6. Morgan requests the Court to issue a temporary restraining order and following a hearing on this matter, issue a preliminary injunction enjoining Defendants and all those in concert or participation with them from the following:

---

[4] *See* https://studentaid.gov/manage-loans/repayment/plans/income-driven
[5] If a borrower on the ICR, IBR, or PAYE plan fails to recertify their income by the annual deadline, they may lose future eligibility for income-driven repayment. *See* https://studentaid.gov/help-center/answers/article/icr-plan-income-family-size-recertification

3

a. Collecting on Morgan's student loan payments until her monthly payment amounts are determined based on the IBR, ICR, and/or PAYE plan;

b. Charging Morgan interest on her student loans until her monthly payment amounts are determined based on the IBR, ICR, and/or PAYE plan;

c. Capitalizing the interest on Morgan's student loans;

d. Determining Morgan has lost eligibility for income-driven repayment under the IBR, ICR, and/or PAYE plans; and

e. Transferring Morgan's student loans to a different agency or otherwise changing the loan holder for Morgan's student loans.

7. Time is of the essence, and the Court should issue a temporary restraining order without written or oral notice to Defendants because President Trump will sign an executive order today directing Secretary McMahon to take all necessary steps to facilitate the closure of the Department of Education.[6] President Trump has indicated the oversight of student loans should be transferred to another agency.[7]

---

[6] Jennifer Jacobs, *Trump to sign order today to begin dismantling Education Department,* CBS News, March 20, 2025, https://www.cbsnews.com/news/trump-executive-order-education-department/ ; Joey Garrison and Zachary Schermele, *Trump to sign order Thursday aimed at eliminating Education Department*, USA Today, March 19, 2025, https://www.usatoday.com/story/news/education/2025/03/19/trump-eliminate-education-department-order/82235735007/ ; Joey Garrison and Zachary Schermele, *President Trump preps executive order to dismantle Education Department*, USA Today, March 6, 2025, https://www.usatoday.com/story/news/education/2025/03/06/trump-executive-order-education-department/80540008007/ (discussing contents of draft executive order reviewed by USA Today).

[7] Annie Nova, *What could happen to your student loans without the Education Department*, March 20, 2025, CNBC, https://www.cnbc.com/2025/03/20/student-loan-impacts-if-the-education-department-shuttered.html (quoting President Trump as stating student loan accounts should be overseen by another department); Annie Nova, *Trump says Education Dept. shouldn't handle student loans: 'Not their business'*, CNBC, March 11, 2025, https://www.nbcphiladelphia.com/news/business/money-report/thats-not-their-business-trump-says-education-dept-shouldnt-handle-student-loans/4130685/ (quoting President Trump as stating that loans should be managed by the Treasury Department, Commerce Department, or the Small Business Administration).

8.	In her recent appearances on Fox News, Secretary McMahon has confirmed that the layoffs this month were the first step toward shutting down the Department of Education.  She has stated "Yes, actually it is [the first step], because that was the president's mandate, his directive to me, clearly, was to shut down the Department of Education."[8]

9.	This Court has authority to grant Plaintiff's requested relief pursuant to Federal Rule of Civil Procedure 65, the Administrative Procedure Act, and the All Writs Act.

10.	Pursuant to Federal Rule of Civil Procedure 65(b), this Court may issue a temporary restraining order without written or oral notice to the non-movant or its attorney only if: (1) specific facts in an affidavit[9] or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (2) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.  If the order is issued without notice, the motion for a preliminary injunction must be set for hearing at the earliest possible time.

11.	Federal Rule of Civil Procedure 65(a) gives the Court discretion to issue a preliminary injunction on notice to the adverse party.

---

[8] Shahar Ziv, *Education Department layoffs are 'First Step' to Shutdown per McMahon*, Forbes, Mar. 13, 2025, https://www.forbes.com/sites/shaharziv/2025/03/13/education-department-layoffs-are-first-step-to-shutdown-per-mcmahon/
[9] Pursuant to 28 U.S.C. § 1746, where any law of the United States or rule requires a matter to be proved by an affidavit, such matter may, with like force and effect, be supported, evidenced, established, or proved by an unsworn declaration.

12. Under 5 U.S.C. section 705, the Court "may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings."[10]

13. Pursuant to 28 U.S.C. section 1651, the Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law. The All Writs Act empowers courts to issue injunctions necessary to preserve the status quo even before the court's jurisdiction is established.[11] The All Writs Act grants courts with extraordinary powers, including the ability to enjoin non-parties who are in a position to frustrate the implementation of a court order or the proper administration of justice.[12] In the context of administrative law, the All Writs Act gives the court power "to preserve [its] jurisdiction or maintain the status quo by injunction pending review of an agency's action."[13]

14. Unless Defendants and those in active concert or participation with them are restrained and enjoined by order of this Court, Morgan will suffer immediate and

---

[10] *See Nat'l Council of Nonprofits v. Office of Mgmt. and Budget*, No. CV 25-239 (LLA), 2025 WL 314433, (D.D.C. Jan. 28, 2025) (issuance of administrative stay while district court awaited full briefing and argument on request for temporary restraining order was warranted where nonprofit organizations alleged memorandum issued by Acting Director of Office of Management and Budget imposing a temporary pause of agency grant, loan, and other assistance programs, was arbitrary and capricious, violated the First Amendment, and exceeded OMB's statutory authority. *See also Fla. v. Mayorkas*, 672 F.Supp. 3d 1206, 1215 (N.D. Fla. 2023) (granting Florida's request for a TRO enjoining the implementation and enforcement of DHS' parole policy in State's action under Administrative Procedure Act for declaratory and injunctive relief).
[11] *FTC v. Dean Foods Co.*, 284 U.S. 597, 603-605 (1966); *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359, n. 19 (5th Cir. 1978).
[12] *In re Lease Oil Antitrust Litig. No. II*, 48 F.Supp.2d 699, 704 (S.D. Tex. 1998) (enjoining parties from entering settlement agreement without obtaining court approval) (*citing ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359, n. 19 (5th Cir. 1978) and *U.S. v. N.Y. Tel. Co.*, 98 S.Ct. 364, 373 (1977)).
[13] *F.T.C. v. Dean Foods Co.*, 384 U.S. 597, 604 (1966).

irreparable injury, loss, and damage. As set forth in the Declaration of Ashley N. Morgan attached as **Exhibit A**, in the absence of injunctive relief, Morgan will suffer financial harm insofar as she will be required to make exorbitant payments each month that she would have to take drastic, detrimental financial maneuvers to afford for even a limited period of time or default on her loans and face severe financial penalties for default. Morgan's alternative would be to extend her general forbearance, depleting her total amount of forbearance available during the life of her loans, which she may need in the event of future adverse life events. The Department of Education is also preventing Morgan from being able to qualifying payments and accrue valuable time toward loan forgiveness. Morgan also risks interest capitalization and loss of eligibility for income-driven repayment plans in the future.

15. Additionally, should Defendants be permitted to transfer management of Morgan's federal student loans to another agency or to the state of Texas, it would frustrate the implementation of a court order in this case and frustrate the administration of justice.

16. Morgan has no adequate remedy at law. She cannot recover monetary damages from the Defendants to compensate her for the injury that would befall her in the absence of injunctive relief.[14]

---

[14] *Ryan, LLC v. F.T.C.*, 739 F.Supp.3d 496, 517 (N.D. Tex. 2024) (nonrecoverable compliance costs satisfied irreparable harm requirement, noting federal agencies are almost always immune from monetary damages); *Texas v. EPA*, 829 F.3d 405, 434 (5th Cir. 2016) (financial losses qualify as irreparable injury where no adequate compensatory or other corrective relief will be available at a later date or where the loss threatens the very existence of the movant's business); *Rest. L. Ctr. v. U.S. Dep't of Lab.*, 66 F.4th 593, 597 (5th Cir. 2023) (economic costs can constitute irreparable harm); *In re NTE Conn. LLC*, 26 F..4th 980, 990-991 (D.C. Cir. 2022) ("[W]e have recognized that financial injury can be irreparable where no adequate compensatory or other corrective

## PRAYER

Morgan moves the Court for a temporary restraining order and after notice to Defendants, a preliminary injunction, under the authority of Federal Rule of Civil Procedure 65, the APA, and the All Writs Act, enjoining Defendants and all those in active concert or participation with them from the following until a determination of the merits in this action:

a. Collecting on Morgan's student loan payments until her monthly payment amounts are determined based on the IBR, ICR, and/or PAYE plan;

b. Charging Morgan interest on her student loans until her monthly payment amounts are determined based on the IBR, ICR, and/or PAYE plan;

c. Capitalizing the interest on Morgan's student loans;

d. Determining Morgan has lost eligibility for income-driven repayment under the IBR, ICR, and/or PAYE plans; and

e. Transferring Morgan's student loans to a different agency or otherwise changing the loan holder for Morgan's student loans.

Morgan prays for all such further relief to which she may show herself justly entitled by law or equity.

Respectfully submitted,

/s/ Ashley N. Morgan
Ashley N. Morgan
State Bar No. 24091339
P.O. Box #151271
Austin, Texas 78715
**PLAINTIFF**

---

relief will be available at a later date, in the ordinary course of litigation.")(cleaned up)(internal quotation omitted).



IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ASHLEY N. MORGAN | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | Civil Action No. 1:25-cv-00416 |
| | § | |
| LINDA MCMAHON, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE UNITED STATES DEPARTMENT OF EDUCATION, AND THE UNITED STATES DEPARTMENT OF EDUCATION | § § § § § § § | |
| Defendants | | |

**DECLARATION OF ASHLEY N. MORGAN
PURSUANT TO 28 U.S.C. § 1746**

THE STATE OF TEXAS                §

COUNTY OF TRAVIS              §

1. "My name is Ashley N. Morgan. I am over the age of 21 years and am fully competent to make this Declaration. I have personal knowledge of the facts stated in this Declaration, which are true and correct.

2. "I am 35 years old. I live and practice law in Austin, Texas.

3. "I have reviewed my Original Complaint (Complaint) and my Application for Temporary Restraining Order and Preliminary Injunctive Relief (Application)  The information contained in paragraphs 1-5, 7-8, 11-13, and 46-66 of my Complaint is true and correct and within my personal knowledge.  The factual information contained in my Application is true and correct and within my personal knowledge.

4. "I have attached true and correct redacted copies of my 2011 master promissory note (MPN) and 2014 MPN as **Exhibits A and B** to my Complaint.  I have

1

redacted certain personal identifying information and the information identifying my personal references from the MPNs.  The 2011 and 2014 MPNs are the only two MPN documents I have been able to obtain from the studentaid.gov website.

5.	"In the master promissory notes that I signed when taking out my student loans, the Department of Education represented to me that I would have the option of repaying my student loans based on an income-driven repayment plan.  *See* **Exhibits A and B** to my Complaint.  When I took out my student loans, I did so in reliance on the Department of Education's representations to me that I would be able to repay my student loans on an income-driven repayment plan.

6.	"I applied for an income-driven repayment plan in 2017, and my application was accepted.  I am on the Income-Based Repayment (IBR) plan for a portion of my student loans and on the Pay as You Earn (PAYE) plan for the remainder.

7.	"Aside from the administrative forbearance instituted by the Department of Education during the COVID-19 pandemic, I have been making regular and timely payments.  Until this year, I have adhered to the income recertification requirements of the PAYE plan.  I have made several years' worth of qualifying payments toward loan forgiveness.

8.	"When I logged into my account with my loan service provider, Nelnet, Inc. (Nelnet), to recertify my income before my March 1, 2025 deadline, I was unable to access the recertification form.  The links to the recertification and application forms for income-driven repayment plans on the https://studentaid.gov/idr/ website were not working.

9.	"As shown in the below screenshot, despite the fact that the recertification form was unavailable, my "dashboard" page for my online Nelnet account continued to reflect that my deadline to recertify my income was March 1, 2025:

2



10. "I accessed my online Nelnet account and attempted to complete the recertification form again on March 1, 2025. The screenshot attached hereto as **Exhibit 1** fairly and accurately represents how the https://studentaid.gov/idr/ website appeared on March 1, 2025, with the links to the recertification and application forms being unavailable. The screenshot attached hereto as **Exhibit 2** fairly and accurately represents how the "dashboard" page for my online Nelnet account appeared on March 1, 2025.

11. "As of the date of this Affidavit, the deadline to recertify my income for income-driven repayment has not been extended. Because I was unable to recertify my income on or before March 1, 2025, my monthly student loan payments have more than quadrupled, from $507.19 to $2,463.58 per month.

3

12.     "My first payment of $2,463.58 was going to be due on April 25, 2025. However, I have requested and been granted a temporary "general forbearance" until June 2025. As shown in the below screenshot which fairly and accurately represents my Nelnet dashboard page as of March 20, 2025, resuming on June 25, 2025, I will be responsible for paying $2,463.58 per month:



13.     "During this general forbearance, it is my understanding that interest will continue to accrue and that any payments I make during the general forbearance will not be qualifying payments toward loan forgiveness. It is my understanding that I have a finite amount of general forbearance months (36 months in total) over the life of my loan. By utilizing some of my forbearance time now, I am reducing the amount of forbearance available to me in the future, which I may need in the event of adverse life events.

4

14. "If I am not able to obtain temporary relief, it is my understanding that the interest on the loans which I was repaying pursuant to the IBR plan will be capitalized. I also risk losing eligibility for the IBR and/or PAYE plans in the future.

15. "The new monthly payment amount is financially devastating for me. I did my financial planning based on having access to income-driven repayment. I purchased a home with my significant other in 2022 in reliance on having access to income-driven repayment options. With the more-than-quadrupled new monthly payment amounts, my half of the mortgage and my student loan payments together now add up to more than half of my net monthly income.

16. "If I am not able to get back on income-driven repayment, I will default on my student loans. I do not have liquid assets that I can utilize to pay the exorbitant new monthly payment amounts. Even if I were to liquidate my 401k accounts, at a significant loss due to income taxes and early withdrawal penalties, I estimate that would cover less than a year of my monthly student loan payments. Beyond the tax implications and early withdrawal penalty, I would also lose profits and significantly impair my ability to prepare for retirement.

17. "I have called my loan service provider and the Department of Education several times since March 1, 2025. I still do not know whether my recertification deadline will be extended, when this may happen, whether there will be an administrative forbearance, or whether there will be any reprieve if I default due to my inability to recertify my income for the PAYE plan or apply for a different income-driven repayment plan. This situation has caused me a tremendous amount of stress and mental anguish.

18. "I am asking the Court to grant a temporary restraining order because I will be irreparably harmed in the absence of injunctive relief. I am asking the Court to issue

a temporary restraining order enjoining Defendants and those in concert or participation with them from the following during the pendency of this action:

    a.     Collecting on Morgan's student loan payments until her monthly payment amounts are determined based on the IBR, ICR, and/or PAYE plan;

    b.     Charging Morgan interest on her student loans until her monthly payment amounts are determined based on the IBR, ICR, and/or PAYE plan;

    c.     Capitalizing the interest on Morgan's student loans;

    d.     Determining Morgan has lost eligibility for income-driven repayment under the IBR, ICR, and/or PAYE plans; and

    e.     Transferring Morgan's student loans to a different agency or otherwise changing the loan holder for Morgan's student loans.

19.     "I am asking the Court to issue a temporary restraining order without notice to Defendants or a hearing because immediate and irreparable injury, loss, or damage will result to me before Defendants can be heard in opposition. Based on public statements made by Secretary McMahon, I have a credible concern that Defendants will be taking additional steps to dismantle the Department of Education before a hearing may be held in this matter and such steps are likely to include transferring responsibility for the management of student loans to another federal agency.

20.     "Defendants have not yet identified who their attorneys will be in this lawsuit, but I have made an effort to call them at 1-800-4FED-AID (1-800-433-3243) to notify them I am seeking a temporary restraining order.

21.     "I declare under penalty of perjury that the foregoing is true and correct."

Executed on March 20, 2025.

                                                            ASHLEY N. MORGAN

# Federal Student Aid
*An OFFICE of the U.S. DEPARTMENT of EDUCATION*

FAFSA® Form ∨ | Loans and Grants ∨ | Loan Repayment ∨ | Loan Forgiveness ∨

Log In | Create Account

applications are temporarily unavailable. Borrowers can still submit a paper loan consolidation application.

## New IDR Applicants

### Apply for an Income-Driven Repayment Plan

There are four different IDR plans to choose from. Our loan estimator can help you compare IDR plans to see which is best for your situation.

Learn more about IDR plans

*OMB No. 1845-1012 • Form Approved*

Log In to Start

View Demo

## Returning IDR Borrowers

### Manage Your Income-Driven Repayment Plan

If your income or family size has changed prior to your recertification date, you can recertify immediately and/or ask for a plan recalculation. You can also explore other IDR options if you're interested in switching plans.

Log In to Start

View Demo

### Who Should Complete This?

- Borrowers currently not on an

### How Long Will it Take?

10 minutes

### What Do I Need?

- A verified FSA ID

**EXHIBIT 1**
exhibitsticker.com

